# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Thomas Dupree, Jr., Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for petitioner. With him on the brief were Theodore B. Olson, and Henry C. Whitaker.

Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel was Donald E. Kinner, Assistant Director.

Edward R. Reines, Weil, Gotshal & Manges, LLP, of Redwood Shores, California, for amici curiae Disabled American Veterans, et al. With him on the brief were Jeffrey G. Homrig and Sonal N. Mehta. Of counsel on the brief were Ronald L. Smith, Disabled American Veterans, and Barton F. Stichman, National Veterans Legal Services Program, Inc., of Washington, DC.

Jeffrey A. Gauger, Attorney, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, DC, for amicus curiae United States Merit Systems Protection Board. With him on the brief were Martha B. Schneider, General Counsel, and Rosa Koppel, Deputy General Counsel.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

_____

DECIDED:  March 7, 2007

_____

Before MICHEL, Chief Judge, NEWMAN, MAYER, Circuit Judges, PLAGER, Senior Circuit Judge, LOURIE, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, Circuit Judges.

MAYER, Circuit Judge, announced the judgment of the court, and filed the opinion for the court with respect to Part I, in which MICHEL, Chief Judge, NEWMAN, Circuit Judge, PLAGER, Senior Circuit Judge, and SCHALL, GAJARSA, and LINN, Circuit Judges, join, and filed an opinion with respect to Part II, in which MICHEL, Chief Judge, NEWMAN, Circuit Judge, PLAGER, Senior Circuit Judge, and GAJARSA, Circuit Judge, join.  GAJARSA, Circuit Judge, filed a concurring opinion, in which NEWMAN, Circuit Judge, and PLAGER, Senior Circuit Judge, join.  MOORE, Circuit Judge, filed an opinion concurring in part and dissenting in part, in which PROST, Circuit Judge, joins, and in which LOURIE, RADER, BRYSON, and DYK, Circuit Judges, join in part. BRYSON, Circuit Judge, filed a dissenting opinion, in which LOURIE, RADER, and DYK, Circuit Judges, join, and in which SCHALL and LINN, Circuit Judges, join in part. DYK, Circuit Judge, filed a dissenting opinion.

MAYER, Circuit Judge.

John E. Kirkendall appeals the decision of the Merit Systems Protection Board, which dismissed his claims that he had been discriminated against in violation of the Veterans Employment Opportunities Act of 1998 ("VEOA"), 5 U.S.C. § 3330a (2000),

and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311 (2000). Kirkendall v. Dep't of the Army, AT-3443-02-0622-I-1, AT-0330-02-0621-B-1 (MSPB Oct. 13, 2004). Because the VEOA is subject to equitable tolling and Kirkendall is entitled to a hearing on his USERRA claim, we reverse and remand.

Background

Kirkendall, a 100% disabled veteran who suffers from organic brain syndrome, applied for a position as a Supervisory Equipment Specialist (Aircraft), GS-1670-12, with the Department of the Army ("agency") at Fort Bragg, North Carolina. Kirkendall's service and resulting disability entitled him to a 10-point preference. He included a resume with his application, which indicated, inter alia, that he had admirably served as the Commander of a Direct Support Platoon at Fort Bragg, and as a Force Integration Officer and an Executive Officer/Commander at Fort Bliss, Texas. In addition, Kirkendall's resume listed numerous, specific duties he had performed, as well as several technical courses he had taken while in the Army. On January 5, 2000, the agency found that Kirkendall's application lacked sufficient detail regarding his experience and rated him ineligible for the position. Kenneth Black, also a 10-point preference eligible veteran, was chosen to fill the position.

Kirkendall filed several complaints with the agency contesting his non-selection, all of which were denied. He then filed a formal complaint with the Department of Labor ("DoL") claiming a violation of his veterans' preference rights and discrimination based on his disability. On November 29, 2001, DoL rejected the complaint because it had not been filed within 60 days of the agency's alleged violation as required by 5 U.S.C.

§ 3330a(a)(2)(A). On June 13, 2002, Kirkendall appealed to the Merit Systems Protection Board.

The administrative judge ("AJ") dismissed Kirkendall's USERRA claim for failure to state a claim, and dismissed his VEOA claim on the ground that where DoL rejects a VEOA complaint as untimely, the board has no authority to decide whether DoL should have waived the 60-day deadline. The AJ dismissed the VEOA claim on the further ground that Kirkendall failed to appeal DoL's rejection to the board within 15 days, as required by 5 U.S.C. § 3330a(d)(1)(B), and that the 15-day deadline could not be equitably relaxed. The board affirmed the AJ's decision that the VEOA claim was precluded for failure to timely file, but reversed the determination that Kirkendall had failed to state a proper claim for relief under USERRA. Rather, the board held that Kirkendall's assertion that he was not selected based on his status as a disabled veteran was cognizable. On remand, the AJ held, without a hearing, that Kirkendall had offered no proof that his veteran status was a substantial or motivating factor in his non-selection. Kirkendall again petitioned the full board for review, but review was denied, and the AJ's remand decision became final.

Kirkendall appealed, and a panel of this court reversed and remanded the decision, holding that the board erred by failing to toll the filing periods contained in 5 U.S.C. § 3330a and by refusing to hold a hearing on his USERRA claim. Kirkendall v. Dep't of the Army, 412 F.3d 1273 (Fed. Cir. 2005). The court then granted the government's petition for rehearing en banc, and vacated the panel's opinion. Kirkendall v. Dep't of the Army, 159 Fed. Appx. 193 (Fed. Cir. 2006) (per curiam order).

The order granting en banc review asked the parties to brief three issues: (1) Is the 15-day period for filing appeals to the Merit Systems Protection Board set forth in 5 U.S.C. § 3330a(d)(1)(B) subject to equitable tolling? (2) Is the 60-day period for filing a claim with the Secretary of Labor set forth in 5 U.S.C. § 3330a(a)(2)(A) subject to equitable tolling? (3) Are all veterans who allege a USERRA violation entitled to a hearing under 5 U.S.C. § 7701? Id. at 194.[1]

Discussion

Preliminarily, we find no merit in the government's suggestion that DoL's rejection of Kirkendall's complaint as untimely under 5 U.S.C. § 3330a(a)(2)(A) constitutes a failure to exhaust administrative remedies depriving both the board and this court of jurisdiction over his VEOA claim.[2] Because the question of whether section 3330a(a)(2)(A) is subject to equitable tolling was at issue, the board had the authority and the obligation to consider whether DoL's action was in error. See Bowen v. City of N.Y., 476 U.S. 467, 482 (1986) (excusing claimants' failure to exhaust their administrative remedies for the same reasons the Court found the underlying timeliness requirement subject to equitable tolling); Zipes v. Trans World Airlines, Inc., 455 U.S.

---

[1]    We are grateful to Theodore B. Olson, Thomas H. Dupree, Jr., and Henry C. Whitaker of Gibson, Dunn & Crutcher LLP, who represented John E. Kirkendall pro bono at the court's request.

[2]    Before the merits panel, the government argued that the board was without jurisdiction to consider Kirdendall's VEOA appeal because of his alleged failure to exhaust administrative remedies. We addressed that argument, and rejected it. In its petition for rehearing en banc, the government did not renew this argument, and we did not grant rehearing on it. As a general rule, the scope of our en banc review is limited to the issues set out in the en banc order. Accord United States v. Padilla, 415 F.3d 211, 217 (1st Cir. 2005) (en banc); Brown v. Stites Concrete, Inc., 994 F.2d 553, 557 (8th Cir. 1993) (en banc). It is, therefore, inappropriate for the government now to reargue exhaustion. However, because exhaustion calls into question our jurisdiction over the tolling issues, we address it to clarify that there are no jurisdictional impediments.

385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); Garcia v. Dep't of Homeland Sec., 437 F.3d 1322, 1331 (Fed. Cir. 2006) (en banc) (The board has "jurisdiction to determine its jurisdiction.") (quoting Cruz v. Dep't of Navy, 934 F.2d 1240, 1244 (Fed. Cir. 1991) (en banc)). To conclude otherwise would foreclose judicial review of DoL's rejection, despite the possibility of tolling, and conflict with the "strong presumption that Congress intends judicial review of administrative action." Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986); see also Conoco, Inc. v. U.S. Foreign-Trade Zones Bd., 18 F.3d 1581, 1585 (Fed. Cir. 1994) ("It is well established that judicial review of agency action is to be presumed, absent clear and convincing evidence of Congressional intent to the contrary."). We, of course, have authority to review the board's decision under 28 U.S.C. § 1295(a)(9).

I. Equitable Tolling

In deciding whether the timing provisions at issue here are subject to equitable tolling, we are guided by Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990). There the Supreme Court established the presumption that equitable tolling is available in suits against the government when permitted in analogous private litigation. Id. at 95-96. A precise private analogue is not required; only that there be sufficient similarity between the suits. See Scarborough v. Principi, 541 U.S. 401, 422 (2004) ("Litigation against the United States exists because Congress has enacted legislation creating rights against the Government, often in matters peculiar to the Government's

engagements with private persons–matters such as the administration of benefit programs. Because many statutes that create claims for relief against the United States or its agencies apply only to Government defendants, Irwin's reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent.").

In so establishing the presumption in favor of equitable tolling, the Court recognized that once the government has consented to be sued through a waiver of sovereign immunity, "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." Irwin, 498 U.S. at 95. Instead, "[s]uch a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." Id. Moreover, it cautioned that "we must be careful not to assume the authority to narrow the waiver that Congress intended, or construe the waiver unduly restrictively." Id. at 94 (quoting Bowen, 476 U.S. at 479) (internal quotation marks omitted).

However, in order to honor congressional intent, the Irwin presumption can be rebutted if "there [is] good reason to believe that Congress did not want the equitable tolling doctrine to apply." United States v. Brockamp, 519 U.S. 347, 350 (1997); see also Young v. United States, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.") (citations and internal quotation marks omitted); United States v. Beggerly, 524 U.S. 38, 48 (1998) ("Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute."). We have interpreted this

to mean that "absent a <u>clear contrary intent</u> of Congress to limit jurisdiction created by a particular statute," we will apply the presumption. <u>Bailey v. West</u>, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (en banc) (emphasis added). To make this determination, we look to the factors enumerated by the Supreme Court in <u>Brockamp</u>: "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter." <u>Brice v. Sec'y of Health & Human Servs.</u>, 240 F.3d 1367, 1372 (Fed. Cir. 2001) (citing <u>Brockamp</u>, 519 U.S. at 350-52). Every factor need not be present to find that Congress intended to preclude tolling, <u>Brice</u>, 240 F.3d at 1372-73, and while unlikely, it is possible for a single factor to be dispositive.

In sum, to determine the availability of equitable tolling in suits against the government, we engage in a two-part inquiry. First, we determine whether such tolling is available in a sufficiently analogous private suit. If so, we look to the <u>Brockamp</u> factors to determine whether Congress expressed a "clear intent" that equitable tolling not apply.

A.

Turning to the matter at hand, the purpose of the VEOA is to provide preference eligible veterans with a method for seeking redress where their veterans' preference rights have been violated in hiring decisions made by the federal government. Where a veteran establishes a violation, the agency is ordered to comply with the veterans' preference statutes and award compensation for any lost wages or benefits suffered by reason of the violation. 5 U.S.C. § 3330c(a). Moreover, if the violation is found to be willful, the agency is ordered to pay the aggrieved veteran "an amount equal to backpay

as liquidated damages." Id. Accordingly, we find that Kirkendall's VEOA claim is sufficiently analogous to private actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to invoke the presumption that equitable tolling applies here. See Irwin, 498 U.S. at 95 (holding that "the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling"); Brice, 240 F.3d at 1372 (holding that claims under the Vaccine Act are sufficiently similar to tort claims so as to invoke the Irwin presumption). This leaves only the question of whether Congress has evinced a clear intent to rebut that presumption.

B.

Kirkendall missed both relevant timing provisions under 5 U.S.C. § 3330a. Therefore, if either period is not subject to equitable tolling, his VEOA claim is barred. Because the government concedes that 5 U.S.C. § 3330a(a)(2)(A)[3] is subject to equitable tolling, and because, if anything, it is comparatively less emphatic, less detailed, and less technical than 5 U.S.C. § 3330a(d)(1),[4] we begin our analysis with

---

[3] 5 U.S.C. § 3330a(a)(2)(A) provides:

A complaint under this subsection must be filed within 60 days after the date of the alleged violation.

[4] 5 U.S.C. § 3330a(d)(1) provides:

If the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board in accordance with such procedures as the Merit Systems Protection Board shall prescribe, except that in no event may any such appeal be brought–
    (A) before the 61st day after the date on which the complaint is filed; or
    (B) later than 15 days after the date on which the complainant receives written notification from the Secretary under subsection (c)(2).
(emphasis added).

section 3330a(d)(1). The government argues, based primarily on section 3330a(d)(1)'s "in no event" clause, that Congress manifested a clear intent to rebut the Irwin presumption. We disagree.

While the "in no event" clause is certainly strong, when the statute's language is considered as a whole and that clause is evaluated in context, the statute's technical language is little more than a neutral factor in our analysis under Brockamp. When taken together with the remaining factors, it certainly does not operate to rebut the Irwin presumption. To begin, the clause at issue, "except that in no event," introduces section 3330a(d)(1)(A), which provides that an appeal may not be brought "before the 61st day after the date on which the complaint is filed." Because section 3330a(d)(1) explicitly stipulates that the Secretary of Labor is to have 60 days to resolve veterans' VEOA complaints before they may seek redress from the board, the clause primarily operates to emphasize Congress' intent to provide a 60-day window left exclusively for DoL review. Because the "in no event" clause first introduces a timing requirement that is not a "deadline" that a complainant can "miss" in a manner giving rise to a late filing, which would thereby invoke considerations of equitable tolling, that clause can hardly be viewed as either clear or emphatic evidence of Congress' intent to foreclose equitable tolling under section 3330a(d)(1)(B).

Moreover, Irwin, 498 U.S. at 95, which "adopt[ed] a more general rule to govern the applicability of equitable tolling in suits against the Government," cautioned against reading too much into seemingly stringent language setting forth a statute's timing requirements. There, the Supreme Court found equitable tolling equally available in two statutes providing for actions against the government, one of which stated, "[w]ithin

thirty days . . . an employee . . . <u>may file</u> a civil action," while the other provided, "[e]very claim . . . <u>shall be barred</u> unless the petition . . . is filed . . . within six years." <u>Id.</u> at 94-95 (emphases added). As the Court explained, "An argument can undoubtedly be made that the latter language is more stringent than the former, but we are not persuaded that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling." <u>Id.</u>

Lending additional support, <u>Bailey v. Glover</u>, 88 U.S. 342 (1874), involved statutory language that is decidedly analogous to that found here, and further illustrates the limited role that these more subtle distinctions in Congress' choice of language play in a court's analysis into whether it may equitably relax a deadline. There, the Supreme Court allowed a plaintiff's late-filed claim to proceed despite statutory language that provided, "<u>no suit</u> at law or in equity <u>shall in any case be maintainable</u> . . . in any court whatsoever, unless . . . brought within two years." <u>Id.</u> at 344 (emphasis added). While <u>Bailey v. Glover</u> specifically relates to claim accrual, not equitable tolling, the Supreme Court nevertheless cites it in <u>Young</u>, 535 U.S. at 49, to support the proposition that limitation periods are customarily subject to equitable tolling, unless it "would be 'inconsistent with the text of the relevant statute.'" (citations omitted). In other words, despite the statute's admonishment that "no suit . . . shall in any case be maintainable," the Court, nonetheless, found that equitable relief was not inconsistent.

With respect to the propriety of applying <u>Bailey v. Glover</u>, to an equitable tolling case, the Supreme Court also cited it in <u>Lampf, Pleva, Lipkind, Prupis & Petigraw v. Gilbertson</u>, 501 U.S. 350, 363 (1991), as a case relating to equitable tolling. Moreover, <u>Glus v. Brooklyn Eastern District Terminal</u>, 359 U.S. 231, 231 (1959), which was cited in

Irwin, held that despite the statutory command, "No action shall be maintained . . . unless commenced within three years from the day the cause of action accrued," because the defendant's fraud caused the plaintiff to let the filing period lapse, the defendant was equitably estopped from using the late filing to bar the action. Glus is an equitable estoppel case, but Irwin, relied on it for the proposition that, "We have allowed equitable tolling in situations . . . where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96 n.4 (emphasis added). Certainly, the availability of the various equitable remedies for relaxing limitations periods are governed by differing considerations, but as the Supreme Court makes clear, these remedies are sufficiently similar that precedents relating to the availability of one are applicable to the others.

In addition, further analysis of Brockamp illustrates the error and weakness in the government's reliance on the "in no event" clause. The statute at issue there, 26 U.S.C. § 6511, provides that a "[c]laim for . . . refund . . . shall be filed . . . within 3 years." 519 U.S. at 349-54. Despite the similarity between the "shall be filed" language and the "shall be barred" clause in Irwin, where equitable tolling was found to apply, Brockamp found equitable tolling unavailable under section 6511. It even characterized the manner in which the statute set forth time limitations as "unusually emphatic." 519 U.S. at 350. This apparent contradiction is readily explained, however, because the Court paid little, if any, attention to the specific language introducing section 6511's timing provision. Instead, the Court based its conclusion on the fact that the statute "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, § 6511 reiterates its

limitations several times in several different ways." Id. at 350-51. It further elaborated that "§ 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling'" and "to read an 'equitable tolling' provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc." Id. at 351-52. The Court also pointed to policy considerations underscoring the need for repose and administrative simplicity in tax cases. In other words, it was a comprehensive view of the statute as a whole and the purpose of the statutory scheme that drove the analysis, not rudimentary reliance on the seemingly, or not so seemingly, stringent nature of the language introducing the statute's timing provisions.

The Supreme Court's decision in Lampf further illuminates our discussion. Despite the fact that the statute at issue there, 15 U.S.C. § 77m, contains an "in no event" clause, that specific language did not play a significant role in the Court's holding that equitable tolling was not available. Instead, as in Brockamp, it relied heavily on the statute's highly technical structure and its explicit allowance for "tolling" within the statute.[5] See 501 U.S. at 363; see also Beggerly, 524 U.S. at 48 (finding that judicially

_____

[5]    15 U.S.C. § 77m provides:

> No action shall be maintained to enforce any liability created under [section 11] or [section 12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under [section 12(a)(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under [section 11] or [section 12(a)(1)] more than three years after the security was bona fide offered to the public, or under [section 12(a)(2)] more than three years after the sale.

(emphasis added).

provided equitable tolling was unavailable because the Quiet Title Act, 28 U.S.C. § 2409a, by providing that the 12-year statute of repose will not "begin to run until the plaintiff 'knew or should have known of the claim of the United States,' has already effectively allowed for equitable tolling") (emphasis added). Indeed, the provision at issue in Lampf provides that suits must be brought either within one year from discovery of the facts constituting a violation, or within the three-year "period of repose," i.e., the explicit exception providing for "tolling," which runs from the date of the relevant transaction. Therefore, the Court said, "Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period." 501 U.S. at 363.

Therefore, given (1) Irwin's command that courts should be wary of allowing subtle distinctions in Congress' choice of language to unduly drive the inquiry into its intent, especially when viewed in light of the Supreme Court analysis in Lampf and Brockamp; (2) the substantial similarity between the "in no event" language here and the language in Bailey v. Glover; and (3) the purpose of the "in no event" clause within section 3330a(d)(1), we find that the statutory language itself is not unusually emphatic. Rather, in this context, it is analogous to the statutory language of "barred" and "shall be filed" found in Glus, 359 U.S. at 231; Irwin, 498 U.S. at 95; Bailey v. West, 160 F.3d at 1361; and Former Employees of Sonoco Products Co. v. Chao, 372 F.3d 1291, 1293 (Fed. Cir. 2004)—all cases in which the relevant statutes were found to be subject to equitable tolling. Because the "in no event" language is of limited, if any, special importance, we firmly reject the government's contention that allowing equitable tolling here renders that language superfluous. Cf. Brown v. Gardner, 513 U.S. 115, 120

05-3077                                    13

(1994) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).[6]

Consistent with Irwin, we perceive no meaningful difference in Congress' intent with respect to the availability of equitable tolling in the statutes at issue here, despite the fact that arguments can undoubtedly be made in support of the proposition that the "in no event" language under section 3330a(d)(1) is more stringent than the "must be filed" language of section 3330a(a)(2)(A). See 498 U.S. at 94-95.

Analysis of the remaining Brockamp factors gives us the firm and definite conviction that Congress did not intend to override the Irwin presumption. First, section 3330a is not detailed. This is especially true in comparison with other administrative schemes held subject to equitable tolling, such as Title VII, Irwin, 498 U.S. at 92, and Social Security, Bowen, 476 U.S. at 469. Similarly, section 3330a is less detailed than the highly complex scheme used to provide benefits to veterans. See Bailey, 160 F.3d

---

[6]    An attempt to draw a distinction between the "in no event" language from section 3330a(d)(1)(B) and the "must be filed" language of section 3330a(a)(2)(A), see post, separate opinion of Moore, J., is inconsistent with Irwin. Moreover, the circuit court precedents upon which it relies to make this distinction are all either irrelevant or cumulative of Supreme Court precedents considered above. See Dubuc v. Johnson, 314 F.3d 1205 (10th Cir. 2003) (the statute at issue, 28 U.S.C. § 1915(g), does not involve a timing provision); Caviness v. DeRand Res. Corp., 983 F.2d 1295, 1300-02 (4th Cir. 1993) (interprets the statute at issue in Lampf); Short v. Belleville Shoe Mfg., 908 F.2d 1385 (7th Cir. 1990) (same); Aldrich v. McCulloch Props. Inc., 627 F.2d 1036 (10th Cir. 1980) (the decision predates Irwin, and the statute at issue, 15 U.S.C. § 1711, is analogous to that in Lampf, i.e., it contains a two-tiered timing structure with a three-year period of repose); Hodgson v. Int'l Printing Pressman & Assistants' Union of N. Am., 440 F.2d 1113 (6th Cir. 1971) (the decision predates Irwin, waiver of the deadline at issue was permitted, and the statute at issue, 29 U.S.C. § 482(b), does not contain "in no event").

1360 (holding that 38 U.S.C. § 7266 is subject to equitable tolling). But see Brice, 240 F.3d at 1373 (holding that the National Childhood Vaccine Injury Act is "part of a detailed statutory scheme which includes other strict deadlines").

Second, section 3330a's fairly simple language is not technical, especially as compared to the tax statute at issue in Brockamp and the securities statute at issue in Lampf. Third, the timing provisions in section 3330a are not repeated. See Brockamp, 519 U.S. at 351 ("[Section] 6511 reiterates its limitations several times in several different ways."). Fourth, section 3330a does not contain explicit exceptions to the two filing deadlines. See Bailey, 160 F.3d at 1365 ("Likewise, section 7266 does not provide its own exceptions to the general rule."); see also Brockamp, 519 U.S. at 351 ("[Section] 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling.'"); Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (en banc) (finding that 28 U.S.C. § 2501 contains an explicit exception for "persons 'under legal disability'"); Brice, 240 F.3d at 1373 ("[T]he Act includes a specific exception from the limitations period for a petition improperly filed in state or federal court."). Moreover, the 15-day filing period under section 3330a(d)(1)(B) is extraordinarily short, in sharp contrast to the three-year period of repose in Lampf, and the "unusually generous" 12-year period of repose in Beggerly, 524 U.S. at 48-49.

Finally, section 3330a's purpose and the statutory scheme in which it operates make it abundantly clear that the Irwin presumption is not rebutted. The purpose of the VEOA is to assist veterans in obtaining gainful employment with the federal government and to provide a mechanism for enforcing this right. In a very real sense, it is an

expression of gratitude by the federal government to the men and women who have risked their lives in defense of the United States. It defies logic to suppose that when Congress adopted the VEOA in 1998, well after the Supreme Court's decision in Irwin, it intended the narrow interpretation that the government gives it. See Young, 535 U.S. at 49-50 ("Congress must be presumed to draft limitations periods in light of [the Irwin presumption].") (citations omitted).

It is also relevant that veterans who seek to enforce their rights under the VEOA often proceed without the benefit of representation, just as Kirkendall did. Under such circumstances, it is "particularly inappropriate" to foreclose equitable relief. Zipes, 455 U.S. at 397 (quoting Love v. Pullman, 404 U.S. 522, 527 (1972)); see also Bowen, 476 U.S. at 480 ("The statute of limitations we construe in this case is contained in a statute that Congress designed to be unusually protective of claimants.") (internal quotation marks omitted).

C.

The government raises one final objection to our holding. It argues that because section 3330a(d)(1)(B) sets forth a provision specifying the time for review, it is "mandatory and jurisdictional," and "not subject to equitable tolling." See Stone v. INS, 514 U.S. 386, 405 (1995) (quoting Missouri v. Jenkins, 495 U.S. 33, 45 (1990)). This contention is without merit. In Bailey v. West, we also confronted a statute specifying the time for review, and sitting en banc, we found that 38 U.S.C. § 7266 is subject to equitable tolling. We held, "statutes specifying the time for review are within the rebuttable presumption in favor of equitable tolling." 160 F.3d at 1367. We further stated: "We recognize that language in Stone and Missouri v. Jenkins can be read to

draw a bright line which would place statutes of limitation on one side of the Irwin presumption and statutes of timing of review on the other. We are not comfortable drawing that line, because the language of Irwin admits of no such distinctions . . . . Missouri v. Jenkins was decided only a few months before Irwin. If the Supreme Court had meant to shield statutes specifying the time for review from the Irwin presumption, we would have expected the distinction to be drawn in Irwin." Id.; accord Socop-Gonzalez v. INS, 272 F.3d 1176, 1192-93 (9th Cir. 2001) (en banc) ("Like the Federal Circuit, we do not believe that the Supreme Court meant to distinguish between statutes of limitations and statutes specifying the time for review when it established the generally applicable rule in Irwin that time limits involved in filing suit against the government are presumed to be subject to equitable tolling.").

In decisions post-dating Bailey, the Supreme Court has "clarified that time prescriptions, however emphatic, 'are not properly typed "jurisdictional."'" Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1242 (2006) (quoting Scarborough v. Principi, 541 U.S. 401, 414 (2004)). In Eberhart v. United States, 126 S. Ct. 403, 405 (2005), the Court stated: "'Clarity would be facilitated,' we have said, 'if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'" (Quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). The Court acknowledged that its "repetition of the phrase 'mandatory and jurisdictional' ha[d] understandably led the lower courts to err on the side of caution by giving [certain time limitations] the force of subject-matter jurisdiction." Eberhart, 126 S. Ct. at 407. These decisions establish that timing provisions like those of section 3330a

are not necessarily "mandatory" or "jurisdictional," and they bolster <u>Bailey</u>'s holding that <u>Stone</u> and <u>Missouri v. Jenkins</u> cannot be read to create a per se rule placing "statutes of limitation on one side of the <u>Irwin</u> presumption and statutes of timing of review on the other." <u>Bailey</u>, 160 F.3d at 1367.

The fact that some provisions specifying the time for review are not subject to equitable tolling is irrelevant to our analysis as to whether it is available under <u>this</u> statute, section 3330a(d)(1)(B). Rather, such holdings are in accord with <u>Irwin</u>'s command that equitable tolling shall not apply where Congress has so provided. 498 U.S. at 96; <u>see, e.g.</u>, <u>Stone</u>, 514 U.S. 386 (holding that based on the statutory text and structure and the nature of congressional amendments to the statutory scheme, motions for reconsideration of a decision by the Board of Immigration Appeals do not toll the 90-day period to appeal a final deportation order); <u>Missouri v. Jenkins</u>, 495 U.S. 33 (holding that where the statute at issue provided for an additional 60 days to file for good cause shown and Congress had demonstrated an intent to preclude tolling, the 90-day period to file a petition for certiorari to the Supreme Court was not subject to equitable tolling); <u>Oja v. Dep't of the Army</u>, 405 F.3d 1349 (Fed. Cir. 2005).[7]

When we consider that the timing provision at issue here is analogous to those found subject to equitable tolling in <u>Irwin</u>, 498 U.S. at 94 (30-day window in which to

---

[7] The <u>dicta</u> in <u>Farzana K. v. Indiana Department of Education</u>, 473 F.3d 703 (7th Cir. 2007), discussed, <u>post</u>, separate opinion of Dyk, J., is not authority for anything, much less, for when equitable relaxation of a <u>federal veterans</u> deadline specifying the timing for review is appropriate. <u>Farzana</u> held that the party there did meet a <u>state's</u> deadline to seek judicial review of a determination, thus making any discussion of equitable relief superfluous.

seek review in district court of a final action by the EEOC),[8] and <u>Bowen</u>, 476 U.S. at 472 (60-day window in which to seek "review" of a denial of social security benefits by the Secretary of Health and Human Services),[9] our holding is unremarkable and entirely consistent with Supreme Court precedent. This is especially so in view of <u>Irwin</u>'s pronouncement that it "adopt[ed] a more general rule to govern the applicability of equitable tolling in suits against the Government," and that "[t]he phraseology of th[e] particular statutory time limit [in 42 U.S.C. § 2000e-16] is probably very similar to some other statutory limitations on suits against the Government." <u>Id.</u> at 94-95.

### D.

Even if this were a close case, which it is not, the canon that veterans' benefits statutes should be construed in the veteran's favor would compel us to find that section 3330a is subject to equitable tolling. See <u>King v. St. Vincent's Hosp.</u>, 502 U.S. 215, 220 n.9 (1991) ("Even if the express examples [from other subsections of the statute at issue] unsettled the significance of subsection (d)'s drafting, however, we would ultimately read the provision in King's favor under the canon that provisions for benefits

---

[8]      42 U.S.C. § 2000e-16(c) (1988) provides in pertinent part:

Within thirty days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title.

[9]      42 U.S.C. § 405(g) (1982) provides in pertinent part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a <u>review</u> of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

(emphasis added).

to members of the Armed Services are to be construed in the beneficiaries' favor."); <u>Ala. Power Co. v. Davis</u>, 431 U.S. 581, 584 (1977) ("This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need.") (quoting <u>Fishgold v. Sullivan Drydock & Repair Corp.</u>, 328 U.S. 275, 285 (1946)). Both subsection 3330a(a)(1)(A) and subsection 3330a(d)(1)(B) are subject to equitable tolling.

## II. Hearing Rights Under USERRA

With respect to hearing rights, our analysis begins with the USERRA statute itself. <u>See</u> <u>Sheehan v. Dep't of the Navy</u>, 240 F.3d 1009, 1012 (Fed. Cir. 2001) (deciding the burden of proof requirement for USERRA actions "[o]n the basis of the statute and the appurtenant legislative history"). 38 U.S.C. § 4324(c)(1) provides: "The Merit Systems Protection Board shall adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b) . . . . A person who seeks a hearing or adjudication by submitting such a complaint under this paragraph may be represented at such hearing or adjudication in accordance with the rules of the Board." The unambiguous meaning of the language is that any veteran who requests a hearing shall receive one. Indeed, section 4324(c)(1) begins, the board "shall adjudicate any complaint brought before [it]." The discretion it then affords does not relate to whether a hearing may be denied, but to how the veteran "may be represented" at the "hearing or adjudication." By providing that the board <u>shall</u> adjudicate all USERRA claims brought before it and affording discretion over how the veteran may be represented at any requested "hearing or adjudication," the statute clearly evinces Congress' intent to

provide veterans with a hearing as a matter of right. To interpret the statute otherwise would render the "such hearing" language nonsensical. The board has discretion neither to deny a requested "adjudication," nor to deny a requested "hearing."

Until now, it has been the board's practice to grant a hearing as a matter of administrative grace, or deny one at its convenience. See, e.g., Matotek v. Dep't of Commerce, 104 M.S.P.R. 36, 41 (2006); Jordan v. U.S. Postal Serv., 90 M.S.P.R. 525, 529 (2002), aff'd, 82 Fed. Appx. 42 (Fed. Cir. 2003). But it must administer the law as Congress wrote it. The board's consistent misapplication of the law can neither be used to defend its practice; nor to justify what Congress did not intend. See Brown v Gardner, 513 U.S. 115, 120-21 (1993) (where the Department of Veterans Affairs' 60-year regulatory practice was contrary to statute, congressional reenactment of the statute and legislative silence did not constitute an implicit endorsement); see also Demarest v. Manspeaker, 498 U.S. 184, 190 (1991) ("Where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction."); Mass. Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 241-242 (1964) (congressional reenactment has no interpretive effect where regulations clearly contradict requirements of statute). To be sure, the board is free to set out regulations for the orderly conduct of business, but it cannot use that discretion to override the congressionally mandated right to a hearing.

5 U.S.C. § 7701(a) lends additional support to our reading of section 4324(c). It provides: "An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. An appellant shall have the right—(1) to a hearing for which

a transcript will be kept; and (2) to be represented by an attorney or other representative." Plainly, Kirkendall's USERRA claim is "appealable" to the board under section 4324, and therefore constitutes an "appeal" entitled to a hearing. Cf. 5 C.F.R. § 1208.4(c) ("'USERRA appeal' means an appeal filed under 38 U.S.C. § 4324."); 5 C.F.R. § 1208.13 (characterizing board review of USERRA claims as "USERRA appeals"); see also Kirkendall v. Dep't of the Army, AT-3443-02-0622-I-1, AT-0330-02-0621-B-1 (MSPB Dec. 4, 2003) (referring to board review of Kirkendall's USERRA claim as an "appeal").

It is true, as the government argues, that Kirkendall's proceeding before the board is not an appeal in the traditional Article III sense, as defined by Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), but this is of no moment. In providing procedural protections for employees of and applicants to the federal government, e.g., 5 U.S.C. § 7512, Congress made clear its intent to vary the Marbury definition of "appeal" in federal employment contexts. Indeed, the vast majority of cases heard by the board, and subject to section 7701 procedures, are "appeals" of employment decisions, disciplinary or otherwise, made in the first instance by an agency. See, e.g., Price v. Soc. Sec. Admin., 398 F.3d 1322 (Fed. Cir. 2005); Guillebeau v. Dep't of the Navy, 362 F.3d 1329 (Fed. Cir. 2004); Knight v. Dep't of Def., 332 F.3d 1362 (Fed. Cir. 2003). These cases do not involve a lower tribunal, such as a district court, yet they clearly involve an initial decision maker distinct from the board, rendering them an "appeal" of agency action. In the same way, USERRA claims derive from an agency's employment decision, e.g., the refusal to hire a veteran.

Merely because Congress described Kirkendall's petition for review as a "complaint" does not suggest that it intended to characterize his action as an "original" proceeding before the board, and deprive him of the right to a hearing. To the contrary, in determining what procedural protections Congress intended to afford USERRA complainants, we look to the substance of the matter, review of an initial agency action, not to the form surrounding it or the name ascribed, initiation of proceedings before the board with a "complaint." Cf. Dolan v. City of Tigard, 512 U.S. 374, 405 n.8 (1994) ("In determining what is due process of law regard must be had to substance, not to form.") (quoting Chicago B. & Q. R. Co. v. Chicago, 166 U.S. 226, 235 (1897)); see also Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("[W]e look to the true nature of the action in determining the existence or not of jurisdiction."); Chem. Eng'g Corp. v. Marlo, Inc., 754 F.2d 331, 333 (Fed. Cir. 1984) ("Implicit in our mandate is the authority to recharacterize pleadings which would improperly evade the intent of Congress."); In re Snap-on Tools Corp., 720 F.2d 654, 655 (Fed. Cir. 1983) ("The issue here turns on the nature of the action as established in the complaint."). Moreover, it is incongruous to presume that Congress intended to provide hearings as a matter of right in cases involving discipline for misconduct, e.g., Price, 398 F.3d at 1322 (constructive suspension); Guillebeau, 362 F.3d at 1329 (Fed. Cir. 2004) (removal), while declining to so provide for veterans who may have been victimized.

There is no ambiguity here. "Ambiguity is a creature not of definitional possibilities but of statutory context." Brown, 513 U.S. at 118; see also St. Vincent's Hosp., 502 U.S. at 221 ("[T]he meaning of statutory language, plain or not, depends on context."). But even if section 4324, especially in the context of section 7701(a), still

fairly permitted of more than one interpretation, the rule set out in St. Vincent's Hospital, 502 U.S. at 220 n.9; Alabama Power Co., 431 U.S. at 584; and Fishgold, 328 U.S. at 285, would demand that we find in Kirkendall's favor. St. Vincent's Hopital, and Brown, 513 U.S. at 117-18, make clear that "interpretive doubt is to be resolved in the veteran's favor" and operate to rebut or eliminate otherwise fair readings in close cases. And this statutory regime emphatically does not admit of deference to the board à la Chevron because "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984). After applying the interpretive rule in Fishgold, it is abundantly clear that Congress' intent is to provide veterans a hearing upon request, especially because we "presume congressional understanding of such interpretive principles," at the time of enactment. St. Vincent's Hospital, 502 U.S. at 220 n.9.

Contrary to the government's assertion, Lindahl v. Office of Personnel Management, 776 F.2d 276 (Fed. Cir. 1985), does not conflict with our holding here; in fact, it enhances it. Lindahl provides that, absent a reference to 5 U.S.C. § 7701 in the statute giving rise to the right of action, there 5 U.S.C. § 8347(d)(1), some of its guidelines, whether procedural or substantive, may apply to an action without invoking all of them, as contrasted with cases under 5 U.S.C. § 8347(d)(2), which explicitly refers to section 7701. Id. at 278-80. Indeed, Lindahl, approved of the board's practice of applying most of section 7701's procedures to voluntary physical disability retirement cases, but not applying its burden of proof. Id. Similarly, section 4324(c)(1) in this case gives rise to the right to a hearing, while 38 U.S.C. § 4311(c)(1) and the legislative

history surrounding USERRA make clear that section 7701(c)'s burden of proof requirement does not apply. See Sheehan, 240 F.3d at 1012-14.

In fact, had Congress referenced section 7701 in the USERRA statute, section 7701(c)'s burden of proof, along with all of section 7701's remaining procedures, would necessarily apply. Therefore, its decision not to reference this "catch-all" statute does not in any way suggest an intent not to provide a right to a hearing. It only demonstrates that Congress, while providing for a hearing, did not necessarily want all of section 7701 to apply. Consequently, because Kirkendall requested a hearing before the board on his USERRA claim, we reverse the board's decision to deny him one.

Conclusion

Accordingly, the decision of the Merits Systems Protection Board is reversed, and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED

# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

GAJARSA, <u>Circuit Judge</u>, concurring, with whom <u>Circuit Judge</u> NEWMAN and <u>Senior Circuit Judge</u> PLAGER join.

I join Part I of the majority, which holds that the 15-day window for filing an appeal to the Merit Systems Protection Board ("Board") under 5 U.S.C. § 3330a is subject to equitable tolling. I also join Part II of the majority, which holds that the veteran is entitled to a hearing before the Board on his USERRA claim. I write separately, however, to provide an additional basis to support the judgment reached in Part I.

## I.

I too begin with <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95-96 (1990), the seminal Supreme Court precedent on the applicability of the equitable tolling doctrine in suits against the government. In <u>Irwin</u>, the Court adopted "a more general rule to govern the applicability of equitable tolling in suits against the Government" and held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." <u>Id.</u> at 95-96.

While acknowledging that a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed," id. (citation omitted), the Court reasoned:

> Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.

Id. The Court thus applied the equitable tolling doctrine to 42 U.S.C. § 2000e-16(c), which specifies the time in days that a Title VII complaint against the government must be filed in district court after final action by the EEOC. Id. at 91, 96.

Accordingly, the Supreme Court has directed courts to engage in a two-step inquiry of asking (1) whether there is a private suit that is "sufficiently similar to warrant asking [2] Irwin's negatively phrased question: Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" United States v. Brockamp, 519 U.S. 347, 350 (1997). Similarly, the rule our court has drawn "from Irwin is that the doctrine of equitable tolling, [1] when available in comparable suits of private parties, is available in suits against the United States, [2] unless Congress has expressed its intent to the contrary." Bailey v. West, 160 F.3d 1360, 1364 (Fed. Cir. 1998) (en banc).

In this case, as noted in the majority opinion, Kirkendall's suit is analogous to a Title VII discrimination claim. The first inquiry of Irwin asks only if the suit against the government is similar, not identical, to a private suit. The statute at issue in this case establishes an administrative procedure for redress for a preference eligible veteran "who alleges that an agency has violated such individual's rights . . . relating to veterans' preference." 5 U.S.C. § 3330a(a)(1)(A). Under the statute, the veteran has

05-3077                                  2

60 days after the date of the alleged violation to file a complaint with the Department of Labor ("DoL"). If the DoL is unable to resolve the complaint within another 60 days, the veteran may "appeal the alleged violation to the Merit Systems Protection Board in accordance with such procedures as the Merit Systems Protection Board shall prescribe, except that in no event may any such appeal be brought . . . later than 15 days after the date on which the complainant receives written notification from" the DoL. Id. § 3330a(d). Similarly, in a Title VII action between private parties, a plaintiff has 180 days from the occurrence of the alleged unlawful employment practice to file a complaint with the EEOC. 42 U.S.C. § 2000e-5(e). If the EEOC dismisses the complaint, the plaintiff has 90 days from the time of EEOC notification to file a civil action in a district court. See id. § 2000e-5(f)(1). Therefore, I agree that Kirkendall's suit is sufficiently similar to proceed to the next Irwin inquiry.

## II.

### A.

The second inquiry of Irwin comes from the Supreme Court's acknowledgment that "Congress, of course, may provide otherwise if it wishes to do so." 498 U.S. at 96. The Court has thus asked: "Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" Brockamp, 519 U.S. at 350; see also Bailey, 160 F.3d at 1364 (asking if "Congress has expressed its intent to the contrary").

The Court found such a reason in Brockamp. The statute at issue in Brockamp stated that a claim "shall be filed" within a period of years, but the Court did not simply hold that those three words evidenced Congressional intent. Rather, the Court examined the entire language in context and found the tax statute to set forth "its

limitations in unusually emphatic form" because the statute (1) sets "forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions"; (2) "reiterates its limitations several times in several different ways"; (3) specifies procedures for "refunds that do not comply with these limitations" and "explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling.'" Id. at 350-52. The Court also examined the substance of the statute and found that equitable tolling the tax statute (4) "would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery—a kind of tolling for which we have found no direct precedent"; and (5) "could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which, upon close inspection, might turn out to lack sufficient equitable justification." Id. at 352-53 (observing that tax law "is not normally characterized by case-specific exceptions reflecting individualized equities").

In this case, it is undisputed that the second, third, fourth, and fifth factors evidence no intent of Congress to preclude equitable tolling. Indeed, the government concedes that VEOA does not reiterate its limitations, contains no explicit exceptions, and would create no serious administrative problem for the Board. As we stated en banc in Bailey, "because the statute addresses timeliness for an appeal from a closed record, it does not threaten administrative complexity or unpredictable fiscal peril." 160 F.3d at 1365 (applying Brockamp in holding that equitable tolling applies to 120-day time limit for appeal in Court of Veterans Appeals). The government does not even mention that tolling VEOA would affect no substantive limitations. Similarly, Judge

Moore's dissent acknowledges that the second and third factors favor tolling in this case, post, at 14-15, and makes no mention of the fourth and fifth Brockamp factors.

Therefore, the only Brockamp factor in dispute is the first, where the Supreme Court found that the tax statute sets "forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." 519 U.S. at 350. As examples, the Court found the following:

> [The Brockamp tax statute] says, first, that a
>
> > "[c]laim for . . . refund . . . of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed . . . within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). . . .
>
> And
>
> > "[i]f the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." § 6511(b)(2)(B).

Id. at 351. In this case, the VEOA statute states simply that "in no event may any such appeal be brought . . . later than 15 days after the date on which the complainant receives written notification from the Secretary under subsection (c)(2)." In comparison with the Brockamp tax statute, the VEOA statute does not set forth its 15-day limitation in a "highly detailed technical manner."

The government concedes that the VEOA statute is not technical, but asserts that it is detailed because it is sequential. See Resp't Br. 25-27. Judge Moore's dissent goes one step further and asserts that the sequential nature of the VEOA statute makes it both "detailed and technical." Post, at 9. As discussed in infra Part II.C, the sequential nature of the VEOA statute fails to satisfy the two-tiered structure of Lampf.

Therefore, Judge Moore's dissent and the government both attempt to shoehorn the sequential nature of VEOA into Brockamp's "highly detailed technical" description of the tax statute excerpted above. This non sequitur, however, is unjustified and contrary to the entire language of the VEOA statute.

Accordingly, Brockamp offers no "good reason to believe that Congress did not want the equitable tolling doctrine to apply" in this case. 519 U.S. at 350.

B.

The Supreme Court also found good reason that equitable tolling should not apply in Beggerly, 524 U.S. 38 (1998). The Quiet Title Act ("QTA") was the statute at issue in Beggerly and stated that QTA actions "shall be barred unless it is commenced within twelve years." 28 U.S.C. § 2409a(g) (emphasis added).

While stating that "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute," Beggerly, 524 U.S. at 48, the Court did not hold that the three words, "shall be barred," precluded equitable tolling. Indeed, Beggerly did not even recite the three words as relevant. Instead, as it did in Brockamp, the Court examined the entire language of the statute in context and found that

> the QTA, by providing that the statute of limitations will not begin to run until the plaintiff "knew or should have known of the claim of the United States," has already effectively allowed for equitable tolling. Given this fact, and the unusually generous nature of QTA's limitations time period, extension of the statutory period by additional equitable tolling would be unwarranted.

Beggerly, 524 U.S. at 48-49 (citation omitted). The Court similarly examined the substance of the statute and found that "[t]his is particularly true given that the QTA deals with ownership of land." Id. at 49.

05-3077                                    6

> It is of special importance that landowners know with certainty what their rights are, and the period during which those rights may be subject to challenge. Equitable tolling of the already generous statute of limitations incorporated in the QTA would throw a cloud of uncertainty over these rights, and we hold that it is incompatible with the Act.

Id.

In this case, there is no text within VEOA that "effectively" allows for equitable tolling based on the date that time begins to accrue. Next, the 15-day time limit at issue here is far from the "unusually generous" 12-year period in Beggerly. Lastly, the government has asserted no "special importance" with the 15-day period under 5 U.S.C. § 3330a(d)(1), and under such circumstances, foreclosing equitable tolling would be "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." Zipes v. TWA, Inc., 455 U.S. 385, 397 (1982) (holding that Title VII filing period is requirement subject to tolling when equity so requires) (citation omitted); see also Majority, ante, at 16.

Judge Moore's dissent attempts to elevate the importance of precluding tolling in the VEOA statute by observing its impact on the public fisc. Post, at 11-12. This argument is unavailing. By definition, the Irwin presumption of equitable tolling applies to statutes that provide for suits against the government and thus, always implicates the public fisc. Therefore, the VEOA statute does not rise to the "special importance" of the QTA in Beggerly, where the Supreme Court found that landowners must "know with certainty what their rights are, and the period during which those rights may be subject to challenge." 524 U.S. at 49.

Accordingly, as with Brockamp, 519 U.S. at 350, there is no "good reason to believe that Congress did not want the equitable tolling doctrine to apply" based on Beggerly.

C.

In Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991), the Supreme Court evaluated a statute that contained the words "in no event" and held that equitable tolling should not apply. Id. at 360 n.7, 363. The Court, however, did not even recite the words "in no event" in reaching its holding regarding equitable tolling. Rather, the Court examined the language of the statute in context. The Securities and Exchange Act statute at issue stated:

> No action shall be maintained to enforce any liability . . . unless brought within one year after the discovery of the untrue statement or the omission . . . . In no event shall any such action be brought to enforce a liability . . . more than three years after the security was bona fide offered to the public.

Id. at 360 n.7 (quoting 15 U.S.C. § 77m) (emphasis added). Based on the structure established by the statute in context, the Court concluded that:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling. . . . Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

Id. at 363 (emphasis added).

In this case, VEOA establishes procedures where a veteran has 60 days to file a complaint and the DoL has another 60 days to resolve the complaint. If the DoL is unable to resolve the complaint within the 60 days after the date on which it is filed, the DoL must notify the veteran, who then has 15 days to file with the Board. These

procedures establish no structure indicating that the 15-day period is a period of repose. Therefore, Lampf does not support a finding precluding equitable tolling.

Nonetheless, Judge Moore's dissent and the government assert that VEOA "is like the two-tiered structure employed in section 13 of the 1933 Securities Exchange Act discussed in Lampf." Post, at 9; Resp't Br. 25-26. By listing multiple sequential time periods, it is true that VEOA establishes a structure. Lampf, however, does not stand for the proposition that any statute with any structure is inconsistent with equitable tolling. Rather, the critical inquiry under Lampf is whether the structure reveals that one limitation is a period of repose. In Lampf, the 3-year limitation served as a cutoff for the 1-year period, which "has already effectively allowed for equitable tolling" by providing that accrual "begins after discovery of the facts." Beggerly, 524 U.S. at 48 (citation omitted); Lampf, 501 U.S. at 363. The 3-year time period thus constituted a period of repose inconsistent with equitable tolling. In this case, the 15-day time limitation for filing with the Board does not serve as a cutoff for the 60-day period for filing a complaint. Therefore, the 15-day period at issue is not a period of repose, and Lampf offers no support for Judge Moore's dissent or the government's position.

By asserting that the structure of VEOA is like "the two-tiered structure" of the Lampf statute, Judge Moore's dissent and the government have essentially stated that if a statute contains more than one time period, there is "good reason to believe that Congress did not want the equitable tolling doctrine to apply." Brockamp, 519 U.S. at 350. Under that rationale, all suits against the government that must be exhausted in an administrative agency before a plaintiff may file in a district court or in the Court of Federal Claims would establish a structure inconsistent with equitable tolling. Such

erroneous reasoning would eviscerate the <u>Irwin</u> presumption established by the Supreme Court. Indeed, because a plaintiff must first exhaust a Title VII claim in the EEOC before filing an action in a district court, the rule argued by Judge Moore's dissent and the government in this case would presumably seek to overturn <u>Irwin</u> itself.

The critical question of <u>Lampf</u> is whether the "structure" establishes a period of repose. In this case, the answer is no, and accordingly, there is no "good reason to believe that Congress did <u>not</u> want the equitable tolling doctrine to apply" under <u>Lampf</u>. <u>Brockamp</u>, 519 U.S. at 350.

## III.

The overriding message of the Supreme Court's precedents of <u>Brockamp</u>, <u>Beggerly</u>, and <u>Lampf</u> is that we should examine the language in context and the substance of the statute in determining whether equitable tolling should not apply in a suit against the government. As shown, when applying the Supreme Court's precedents properly, the government and the dissenting opinions have failed to show that equitable tolling is inconsistent with the text of VEOA. Therefore, there is no "good reason to believe that Congress did <u>not</u> want the equitable tolling doctrine to apply." <u>Brockamp</u>, 519 U.S. at 350.

The government and the dissenting opinions, however, attempt to create new exceptions to scale back the presumption of tolling that the Supreme Court established in <u>Irwin</u>. These new exceptions are based on misinterpreting Supreme Court precedent and disregarding this court's precedent.

A.

First, Judge Moore's dissent attempts to establish a new rule holding that three words alone, "in no event," preclude equitable tolling. To do so, her dissent seizes on one sentence in Brockamp, 519 U.S. at 350 (emphasis added), stating that the tax statute "sets forth its time limitations in unusually emphatic form," and labels it a Brockamp factor. Post, at 3-8. Her dissent then discards the five Brockamp factors actually enunciated and makes its newly created "unusually emphatic" factor dispositive.

This misreads and misrepresents Brockamp. While the Brockamp sentence taken out of context could be read as an independent factor, reading the Supreme Court's entire discussion reveals that it states a conclusion based on the five factors discussed above in supra Part II.A. See 519 U.S. at 350-54. The Court did not, as Judge Moore's dissent does, identify certain words as being "unusually emphatic" in form. Rather, the Court evaluated, as I do here, the five enunciated Brockamp factors. It is clear to me that the phrase "unusually emphatic" in Brockamp is not an independent factor but a conclusion based upon the enunciated factors, and there is no controlling precedent to the contrary.

Judge Moore's dissent also concludes summarily that "[s]hort of saying 'equitable tolling shall not apply,' we do not think Congress could have been clearer." Post, at 5. Congress, however, enacted the VEOA statute after the Supreme Court decided Irwin. Therefore, Congress could have placed the words "equitable tolling shall not apply" in the statute but did not do so. Her dissent offers no rationale for why we should not require the words "equitable tolling shall not apply" when precluding equitable tolling based on a few words selectively removed from the entire language and substance of a

statute.  As the Supreme Court stated regarding the Irwin presumption, "Congress must be presumed to draft limitations periods in light of this background principle."  Young v. United States, 535 U.S. 43, 49-50 (2002) (citations omitted).  Moreover, the footnote assertion of her dissent that no statute contains such words is no justification for us to define an incantation of other "magic words" to preclude equitable tolling.  Post, at 5.

Even if it were prudent to identify certain words as precluding equitable tolling, Judge Moore's dissent offers no rationale for why the words "in no event" are so "unusually emphatic."  Time limitations in statutes often include words such as "shall," "must," or "barred."  It is wholly unclear from her dissenting opinion and the government's brief what would make one of these terms merely "ordinary and simple," another "emphatic," another "usually emphatic," and another "unusually emphatic."  Similarly, while I agree with the proposition that "equitable tolling is not permissible where it is inconsistent with the text of the relevant statute," Beggerly, 524 U.S. at 48, Judge Moore's dissent offers no reasoned justification to explain why tolling is consistent with a statute that uses, for example, the term "must" but is inconsistent with a statute that uses the term "in no event."

The cases cited by Judge Moore's dissent from other circuits to the contrary are neither controlling nor applicable.  See Dubuc v. Johnson, 314 F.3d 1205, 1209 (10th Cir. 2003) (interpreting not periods of limitation, but prerequisites of proceeding in forma pauperis); Webb v. United States, 66 F.3d 691, 700-02 (4th Cir. 1995) (interpreting statute of repose from two-tiered Lampf structure); Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1043 (10th Cir. 1980) (same); Caviness v. Derand Res. Corp., 983 F.2d 1295, 1301 (4th Cir. 1993) (same); Hodgson v. Int'l Printing Pressman & Assistants'

Union of N. Am., 440 F.2d 1113, 1116-17 (6th Cir. 1971) (proposing that "[i]t may, however, be significant that the more emphatic language 'but in no event after 60 days' was not adopted," but placing no weight on such legislative history in ultimate holding).

Therefore, there is no reasoned justification to create a new exception to the Irwin presumption to preclude the application of equitable tolling based on the use of the three words "in no event."

B.

Second, Judge Moore's dissent attempts to establish a new rule holding that time limits "for filing an appeal rather than an initial cause of action" constitute a factor weighing "against a finding that equitable tolling applies." Post, at 13-14. As discussed by the majority opinion, ante, at 16-19, this court decided en banc in Bailey that the same Irwin presumption applies to statutes of limitations and statutes of timing of review. See 160 F.3d at 1366-68. Judge Moore's argument in this case that the nature of the deadline is nonetheless relevant merely recasts the argument that this court dismissed in Bailey. Specifically, by considering the appellate nature of a deadline to be a factor against equitable tolling, her dissent attempts to bifurcate the equitable tolling doctrine into two branches: (1) for time limits of initial causes of action, the Irwin presumption applies, and (2) for time limits of filing appeals, a lighter presumption or no presumption applies.

Of course, this court sitting en banc may reconsider our own precedent. Judge Moore's dissent, however, has not even acknowledged that its argument seeks to overturn our en banc decision. Moreover, Judge Dyk's dissent, by explicitly seeking to overturn Bailey and failing, highlights the fact that Bailey remains controlling law.

Therefore, <u>Bailey</u> compels us not to create a new exception applying a lighter or no presumption to time limits dealing with periods of review.

**IV.**

Accordingly, the Supreme Court's decisions in <u>Irwin</u>, <u>Brockamp</u>, <u>Beggerly</u>, and <u>Lampf</u>, and our decision in <u>Bailey</u> dictate that the doctrine of equitable tolling applies to the VEOA statute and that Kirkendall has at least the opportunity to equitably toll the time limit.

# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

MOORE, <u>Circuit Judge</u>, concurring-in-part and dissenting-in-part, in which PROST, <u>Circuit Judge</u> joins, and LOURIE, RADER, BRYSON, and DYK, <u>Circuit Judges</u>, join as to Part I.

I disagree with the majority's conclusion that section 3330a(d)(1) of Title 38 is subject to equitable tolling. Therefore, I dissent from Part I of the majority opinion. Additionally, while I agree with the majority that Kirkendall is entitled to a hearing on his Uniformed Services Employment and Reemployment Rights Act ("USERRA") claim, section 4324(c)(1) cannot be read to confer that right. Rather, I believe that Kirkendall has that right because the Merit Systems Protection Board ("Board"), through its regulations, has defined Kirkendall's USERRA claim as an "appeal" for which a hearing is granted under 5 U.S.C. § 7701. Therefore, I concur in the result with respect to Part II of the majority's opinion.

I.  Equitable Tolling

The Veterans Employment Opportunities Act of 1998 ("VEOA") is an employment statute designed to provide certain preference-eligible veterans with a method for seeking redress if veteran's preference rights have been violated in hiring decisions made by the federal government. See H.R. REP. NO. 105-40(I) (1997), 1997 WL 136375, at *9. By statute, VEOA claimants must first file a complaint with the Department of Labor ("DoL") within 60 days of the alleged veterans preference violation, 5 U.S.C. § 3330a(2)(A), and if the Secretary of Labor is unable to resolve the complaint, the claimant may appeal to the Board within 15 days of receiving notice that the DoL was unable to resolve the complaint. See 5 U.S.C. § 3330a(d)(1)(B) (2000). The majority holds that both of these deadlines may be equitably tolled.[1]

While I agree that under our precedent, there is a presumption that equitable tolling applies to Kirkendall's VEOA appeal under section 3330a(d)(1)(B), in my opinion, Congress rebutted that presumption when enacting the 15-day deadline for appealing to the Board. See Bailey v. West, 160 F.3d 1360, 1364-65 (Fed. Cir. 1998) (en banc) (concluding that the Irwin presumption applies to the deadline for filing an appeal under 38 U.S.C. § 7266(a)); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990). The presumption that equitable tolling applies may be rebutted if "there [is] a good reason to believe that Congress did not want the equitable tolling doctrine to apply." United States v. Brockamp, 519 U.S. 347, 350 (1997). In Bailey v. West, we

_____

[1]  Because I conclude that the 15-day deadline is not subject to equitable tolling, I need not reach the question of whether the 60-day deadline may be equitably tolled.

stated that "Irwin commands that tolling should be presumed absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute."  160 F.3d at 1368.

Factors that help us discern Congress's intent include whether the limitations are provided in unusually emphatic form, whether the limitations are set forth in a highly detailed technical manner, the statute's underlying subject matter, whether the limitations are reiterated in several different ways, and whether the statute sets forth explicit exceptions.  Brockamp, 519 U.S. at 350-52.  All Brockamp factors need not be present to find that Congress intended to preclude tolling.  See Brice v. Sec'y of Health & Human Servs., 240 F.3d 1367, 1372-73 (Fed. Cir. 2001).  When analyzing a statute in view of the Brockamp factors, courts must remember that "equitable tolling is not permissible where it is inconsistent with the text of the relevant statute."  United States v. Beggerly, 524 U.S. 38, 48 (1998); see also Young v. United States, 525 U.S. 43, 49 (2002) (noting that it is "hornbook law" that limitations periods are tollable "unless tolling would be 'inconsistent with the text of the relevant statute'").

The majority only considers the Brockamp factors in its analysis and turns a blind eye toward other considerations which have traditionally been used to determine Congress's intent in statutory construction.  In determining whether there is "good reason to believe that Congress did not want the equitable tolling doctrine to apply," Brockamp, 519 U.S. at 350, courts should look at all the evidence of congressional intent including all appropriate canons and tools of statutory construction, the plain words of the statute, and the nature of the proceeding provided for in the statute.

Based on the Brockamp factors, the majority concludes that Congress has not expressed a "clear contrary intent," Bailey, 160 F.3d at 1368, to preclude equitable

tolling and therefore the time period in section 3330a(d)(1)(B) can be equitably tolled. I disagree. Numerous factors suggest that Congress did not intend that the 15-day time period for filing an appeal be equitably tolled. These factors include: the emphatic "in no event" language—particularly when compared to the less emphatic language used to specify deadlines elsewhere in the VEOA, the highly detailed and technical structure of the administrative redress scheme embodied in the VEOA and the centrality of the 15-day deadline in that process, that the VEOA is a federal employment statute inherently requiring speedy resolution of grievances, and the fact that the deadline is a mandatory and jurisdictional appellate deadline.

A.

I believe that Congress set forth the 15-day deadline in unusually emphatic form. Brockamp, 519 U.S. at 350-52. Specifically, the "in no event" language is unequivocal and emphatic. The statute provides:

> If the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board in accordance with such procedures as the Merit Systems Protection Board shall prescribe, except that in no event may any such appeal be brought—
>
> (A)    before the 61st day after the date on which the complaint is filed; or
>
> (B)    later than 15 days after the date on which the complainant receives written notification from the Secretary under subsection (c)(2).

5 U.S.C. § 3330a(d)(1) (emphasis added). If the "in no event" language is not meant to foreclose tolling, it would be entirely superfluous. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (adopting construction of a statute that avoids rendering statute's language "insignificant, if not wholly superfluous"); Williams v. Taylor, 529 U.S. 362, 404 (2000) ("It is . . . a cardinal principle of statutory construction that we must 'give effect, if

05-3077                                             4

possible to every clause and word of a statute.' <u>United States v. Menache</u>, 348 U.S. 528, 538-39 (1955)." (additional citations omitted)).  To permit equitable tolling in spite of the "in no event" language would be "inconsistent with the text of the relevant statute" and therefore impermissible.  <u>See</u> <u>Beggerly</u>, 524 U.S. at 48.  "In no event" is equivalent to stating "there shall be no exceptions."  Short of saying "equitable tolling shall not apply,"[2] Congress could not have been clearer.

Other circuit courts agree that when Congress includes the "in no event" clause in a statute, Congress means what it says.  <u>See</u> <u>Aldrich v. McCulloch Properties, Inc.</u>, 627 F.2d 1036, 1043 (10th Cir. 1980) (interpreting the "in no event" language in the Interstate Land Sales Full Disclosure Act ("ILSFDA," 15 U.S.C. § 1711) and stating "[t]he last sentence of this section uses strong and unambiguous terms which, if not meant to create an absolute bar to untimely suits under the ILDSFA, are extraneous and meaningless"); <u>Caviness v. Derand Res. Corp.</u>, 983 F.2d 1295, 1301 (4th Cir. 1993) (stating that permitting equitable tolling of section 13 of the Securities Act of 1933 "would require us to ignore the plain meaning of the language that says 'in no event' may an action be filed more than three years after the sale and defeat the very purpose of the statute of repose"); <u>Webb v. United States</u>, 66 F.3d 691, 701-02 (4th Cir. 1995) (citing <u>Short v. Belleville Shoe Mfg. Co.</u>, 908 F.2d 1385, 1391-92 (7th Cir. 1990), which concluded that "[u]nless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years . . . it serves no purpose at all"); <u>Dubuc v. Johnson</u>, 314 F.3d 1205, 1209 (10th Cir. 2003) (noting the irony that the language "in no event" must lead to a result contrary to the purpose of 28 U.S.C. § 1915(g), but finding this

---

[2]    Appellant proffered this language to the court during oral argument, but could point to no statute in which Congress used this language.

05-3077                                    5

insufficient to "justify the judicial repeal of § 1915(g)'s 'in no event' language"); Hodgson v. Int'l Printing Pressman & Assistants' Union of N. Am., 440 F.2d 1113, 1116-17 (6th Cir. 1971) (stating "[i]t may, however, be significant that the more emphatic language 'but in no event after 60 days' was not adopted" in assessing the applicability of equitable tolling to 29 U.S.C. § 482(b) (1964)).

The majority would like to divorce the analysis of Congress's intent from the words of the statute. The majority suggests that the Supreme Court pays "little, if any attention to the specific language" of the statute when determining whether Congress intended the statute to be tollable. Maj. op. at 11. This narrow reading of equitable tolling case law is inconsistent with basic and fundamental tenets of statutory construction, which attempt to discern congressional intent by first looking to the language of the statute itself. See Lamie v. United States Tr., 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text . . . ."); Holloway v. United States, 526 U.S. 1, 6 (1999) ("[T]he language of the statutes that Congress enacts provides the most reliable evidence of its intent. For that reason, we typically begin the task of statutory construction by focusing on the words that the drafters have chosen."); Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute is its language . . . ."); United States v. Scharton, 285 U.S. 518, 521 (1932) ("We are required to ascertain the intent of Congress from the language used [in the statute]."). In my view, the Supreme Court's equitable tolling cases, like all statutory interpretation cases, require us to consider the language chosen by Congress to determine whether Congress intended that equitable tolling apply. See Beggerly, 524 U.S. at 48 ("equitable tolling is not permissible where it

is inconsistent with the text of the relevant statute"); Brockamp, 519 U.S. at 350-52 (looking at the "unusually emphatic form" for the statute and holding that "linguistically speaking" the statute uses "language that is not simple").

The majority suggests that the Supreme Court's decision in Bailey v. Glover, 88 U.S. 342, 349 (1874), underscores the minimal importance of the language of the statute in determining congressional intent. Maj. op. at 10-11 ("[D]espite the statute's admonishment that 'no suit . . . shall in any case be maintainable,' the Court, nonetheless, found that equitable relief was not inconsistent."). In my opinion, Bailey fails to support to the majority's insistence that we ignore the plain language of the statute in determining congressional intent regarding equitable tolling. That case did not involve the "in no event" language used here but rather a less emphatic reference to "in any case," meaning merely that the statute applied generally. Bailey is not an equitable tolling case. In that case, the Supreme Court adopted what has come to be known as the "fraudulent concealment doctrine." In the event of fraud, the Supreme Court held that equity would intervene to prevent the claim from accruing despite the statute's language that "no suit in law or equity shall in any case be maintained . . . unless brought within two years." Id. Bailey, therefore, deals with when a claim accrues and the statute begins to run, carving out an exception to statutes of limitations when the facts giving rise to the cause of action have been fraudulently concealed from a claimant.[3] Id. at 349-50. Because there are no allegations that Kirkendall's appeal was

---

[3]   Although Bailey has been cited in cases wording the applicable doctrine as "equitable tolling," this does not change the limited nature of the holding in Bailey. For example, in Lampf, the petitioner's arguments were directed to whether fraud should equitably relax the deadline at issue. 501 U.S. at 363 ("Thus, this Court has said that in the usual case, 'where the party injured by the fraud remains in ignorance of it

not timely filed due to fraudulent concealment by the government, this narrow exception does not apply.  In fact, Kirkendall's counsel conceded during oral argument that the present appeal addresses equitable tolling and not claim accrual.

B.

Reading the emphatic "in no event" language as it is used in the context of the entire VEOA further evinces Congress's intent to preclude tolling.  In all other parts of the VEOA, Congress used less emphatic language to establish time limits.  For example, the statute says that a complaint with the DoL "must be filed within 60 days after the date of the alleged violation."  5 U.S.C. § 3330a(a)(2)(A).  If a claimant chooses to pursue redress through the district courts rather than the administrative process, they must do so "not later than 60 days after the date of the election."  5 U.S.C. § 3330b(a) (2000 & Supp. 2006).  Section 3330b(b) states: "[a]n election under this section may not be made—(1) before the 121st day after the date on which the appeal is filed with the Merit Systems Protection Board."  None of the other sections of the VEOA say "in no event."  All other time limits for pursuing action under the VEOA allow for longer time limits and use language which is far less emphatic.  Yet, Congress chose a more rigid time period for bringing actions to the Board once the administrative process was underway.  Again, proper weight should be given to the words Congress chose, especially where Congress itself has drawn a distinction in the words it used in the

---

without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'")  Read in context, the Supreme Court's citation of Bailey in Lampf makes sense.  Therefore, I do not read the Supreme Court's decisions as interjecting Bailey's fraudulent concealment doctrine into all equitable tolling cases where fraud is not at issue.

same statute. See <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 712 n.9 (2004) (stating that there is a "usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended" (internal citations and quotations omitted)); <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983); 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46:6 (6th ed. 2000) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."); <u>United States v. Ahlers</u>, 305 F.3d 54, 59-60 (1st Cir. 2002) ("It is accepted lore that when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this differential draftsmanship was deliberate."). The use of the "in no event" language alongside less emphatic language in the VEOA further convinces me that Congress intended to foreclose equitable tolling in the appeals portion of the process.

## C.

Read as a whole, the VEOA is detailed and technical; it sets forth various time limits for filing at the different stages of the administrative process. These time limits are detailed and sequential and further support my conclusion that Congress did not intend the 15-day time period in subsection (d)(1)(B) to be equitably tolled as that deadline stands in the middle of the sequential administrative redress process.[4] The structure of subsection (d)(1) is technical in nature and is like the two-tiered structure

---

[4] The majority suggests that the short 15-day time period favors tolling, relying on the three- and twelve-year periods of <u>Lamph</u> and <u>Beggerly</u>. <u>Maj. op.</u> at 15. The statutes at issue there, however, were limitation periods for bringing actions, rather than time for review provisions, as in this case. This distinction is an important one. There is clearly an interest in expeditious resolution of employment disputes once in progress, thereby justifying much shorter time limits.

employed in section 13 of the 1933 Securities Act discussed in <u>Lamph, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350 (1991). The <u>Brockamp</u> factor (that detailed, technical language weighs against tolling) focuses on the detail in the statute's enumeration of the time limits rather than an analysis of the technical nature of the underlying subject matter to which the statute pertains. <u>See</u> <u>Brockamp</u>, 519 U.S. at 851-52 (discussing the detailed, technical language used to set forth the statute's time limits). The statute in question does not merely prohibit an appeal more than 15 days after receiving notice from the DoL regarding the results of its investigation, but also prohibits the filing of an appeal before the 61st day. <u>See</u> 5 U.S.C. § 3330a(d)(1). The statute, in this case, details a specific window during which the appeal must be filed; it cannot be filed too early (before the 61st day after the date on which the complaint is filed) or too late (more than 15 days after the DoL notice is received). <u>Id.</u>

Although the majority also considers the nature of this window for the appeals process created by Congress, it draws incorrect inferences from it. The majority suggests that the purpose of the "in no event" language is to "introduce[] a timing requirement that is not a 'deadline'" and merely "emphasize[s] Congress' intent to provide a 60-day window left exclusively for DoL review." <u>Maj. op.</u> at 9. The majority's conclusion is self-contradictory. The "in no event" language cannot demonstrate congressional intent to bar an early appeal to the Board, but at the same time permit an appeal filed after the 15-day time period—the "in no event" clause applies equally to both subsection (d)(1)(A) and (d)(1)(B).

D.

The substance or subject matter of the statute also leads me to believe that Congress did not intend equitable tolling to apply to the 15-day deadline. The majority believes that the policies underlying section 3330a compel the conclusion that the 15-day deadline in section 3330a(d)(1)(B) is subject to equitable tolling. Maj. op. at 15-16, 19-20. It is true that, when possible, veterans' benefits legislation should be "liberally construed for the benefit of those who left private life to serve their country in its hour of great need." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285 (1946). Courts must, however, be mindful that a statute's correct construction is consistent with the language Congress chose to use in the statute. The VEOA's redress mechanism is "modeled after the procedures established in [USERRA]." S. REP. NO. 105-340, 1998 WL 658809, at *16 (1998). There is no time limit for filing a USERRA complaint with the Board. See 5 C.F.R. § 1208.12 ("there is no time limit for filing a USERRA appeal directly with the Board"). That the VEOA, an employment statute, includes time limitations for filing with the Board whereas USERRA, an antidiscrimination statute, does not include any such limitation, further weighs in favor of concluding that tolling of the 15-day deadline is inappropriate. Congress's choice of emphatic language coupled with a relatively short deadline for filing an appeal strongly support the notion that Congress acted deliberately and intended the result that it legislated—particularly where the statute upon which the VEOA was based included no time limits for filing an appeal.

Moreover, Congress chose to codify the VEOA in Chapter 33, Title 5, the section of the United States Code directed to government organization and employees, whereas USERRA is codified in Title 38, which relates to statutory veterans' benefits.

Claims under the VEOA challenge the methodology used by the federal government in reaching hiring decisions and could result in changes in the way that agencies make such decisions. Once a challenge to an agency's hiring decision has been made, it ought to be resolved expeditiously otherwise uncertainty remains in the government hiring process. Obviously, the government would prefer not to pay two people to do one job and the longer it takes to resolve the hiring dispute, the more money in the way of back pay is at stake. It is therefore important that VEOA complaints are resolved expeditiously so that the government can operate efficiently. Accord 5 U.S.C. § 3301 (2000) (giving the executive power to promulgate such regulations as "will best promote the efficiency of service").

E.

It is also significant that this statute is one specifying the time for filing an appeal. Although in Bailey v. West we rejected the notion that statutes "specifying the time for review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional," our holding in Bailey does not preclude us from considering the context of the deadline as relevant to the Brockamp subject matter inquiry.[5] Bailey, 160 F.3d at 1367; see also Oja v. Dep't of the Army, 405 F.3d 1349, 1359 (Fed. Cir. 2005). Our

---

[5]   To the extent that Bailey is read as permitting equitable tolling even where a statute is decisively "mandatory and jurisdictional" it would seem inconsistent with Supreme Court precedent. Missouri v. Jenkins, 495 U.S. 33, 45 (1990); Stone v. INS, 514 U.S. 368, 405 (1995); see also Neverson v. Farquharson, 366 F.3d 32, 40 n.8 (1st Cir. 2004) ("[I]t may be that when a time limit is phrased in jurisdictional terms, the Irwin presumption is rebutted;" "the Supreme Court after Irwin has continued to characterize 'jurisdictional' time limits as ineligible for equitable tolling."). If Stone and Jenkins are interpreted as prohibiting equitable tolling of statutory time limits that are mandatory and jurisdictional, equitable tolling would not be permitted in this case because section 3330a(d)(1) is the sole statutory section providing an individual the ability to appeal a VEOA violation to the board.

opinion in Bailey itself recognizes that the Supreme Court has found statutes specifying the time for review to be "mandatory and jurisdictional" and "not subject to equitable tolling." 160 F.3d at 1366-67; see also Stone v. INS, 514 U.S. 368, 405 (1995) (holding that judicial review provisions "are mandatory and jurisdictional . . . and are not subject to equitable tolling" (internal citations and quotations omitted)); Missouri v. Jenkins, 495 U.S. 33, 45 (1990) (stating that the 90-day time period for filing a petition for certiorari in a civil case is "mandatory and jurisdictional" and that the Court does not have "authority to extend the period for filing except as Congress permits"). Hence, while the fact that the time limit at issue is for filing an appeal rather than an initial cause of action may not be dispositive, we find the context relevant to our analysis. Appeals in this case are filed after the appellant has received notice regarding the specific time periods and location for appealing. In this case, Kirkendall received notification from DoL that his complaint was dismissed as untimely on November 29, 2001. This notification stated that Kirkendall had "the right to take [his] claim to the Merit Staffing [sic Systems] Protection Board (MSPB), that claim must be filed within 15 days of the date following the receipt of this notification." U.S. DoL Ltr. to Kirkendall (Nov. 29, 2001) (emphasis in original). Kirkendall did not file his appeal with the Board until June 13, 2002—nearly six months later. For initial filings, in contrast, litigants are often without information as to statutes of limitations periods or even appropriate methods of filing for redress. Accordingly, the nature of the deadline in this case, i.e., the time for filing an appeal, where notice about the filing deadline and requirements had been given, further weighs against a finding that equitable tolling applies.

05-3077                                          13

F.

Although Congress did not create any exceptions to the filing deadlines in section 3330a(d)(1) or repeat the time periods for filing an appeal, these factors cannot outweigh the evidence that Congress did not intend equitable tolling apply to the 15-day time period. Congress may not have allowed for exceptions because it did not intend for there to be any—as the "in no event" language plainly suggests. Moreover, when Congress speaks clearly expressing its intent that "in no event" may the time period be extended, it seems inappropriate to conclude that the fact that it did not say it twice ought to weigh against giving force and effect to Congress's words. Hence, while repetition and exceptions may weigh in favor of precluding equitable tolling, and certainly Supreme Court cases confirm that they do, e.g., Brockamp, 519 U.S. at 352, it does not necessarily follow that the absence of these factors favors permitting tolling.[6]

After considering: the emphatic language which Congress chose to articulate the particular timeframe at issue especially when compared to other timeframes in the VEOA; the detailed nature of the redress process in the VEOA; the detailed administrative redress scheme of which 3330a(d)(1) is a small, yet central part of; the fact that the VEOA pertains to federal employment decisions; that the deadline is akin an appellate deadline that is, in many ways, mandatory and jurisdictional in that it is the sole statute providing the Board's jurisdiction over VEOA claims, I cannot conclude that Congress intended that section 3330a(d)(1)(B) be equitably tolled. Because Kirkendall

---

[6] For example, had Congress said "equitable tolling shall not apply," would the majority still suggest that because they did not say it twice or allow exceptions, tolling is permitted?

failed to meet the 15-day deadline for filing an appeal to the Board on his VEOA claim, and that deadline is not subject to equitable tolling, I respectfully dissent.

II.    Right to a Hearing on USERRA Claim

The lead opinion holds that section 4324(c)(1) "unambiguously" requires the Board to provide Kirkendall a hearing on his USERRA claim.[7]  I do not agree with the interpretation of the statute reached in the lead opinion.  Rather, I conclude that the Board's own regulations, rather than anything in USERRA, provide Kirkendall with the right to a hearing under section 7701 of Title 5.  It is for this reason that I concur only in the result with respect to Part II of the lead opinion.

A.

Section 4324(c)(1) provides in full:

> The Merit Systems Protection Board shall adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b), without regard as to whether the complaint accrued before, on, or after October 13, 1994.  A person who seeks <u>a hearing or adjudication</u> by submitting such a complaint under this paragraph <u>may be represented at such hearing or adjudication</u> in accordance with the rules of the Board.

38 U.S.C. § 4324(c)(1) (2000) (emphasis added).  The plurality relies heavily on the language that that Board "shall adjudicate any complaint brought before [it]."  <u>Maj. op.</u> at 20 (quoting section 4324(c)(1)).  Nothing in the statute requires that "adjudication" automatically include a "hearing."  In fact, the word "adjudication" is used disjunctively from the term "hearing" and indicates that they have different meanings.  <u>Sosa</u>, 542 U.S. at 712 n.9.  The plurality believes that any interpretation of the statute that does not confer the right to a hearing renders the "at such hearing" language of the statute

---

[7]    Notably, no party or amici at any time during any of the proceedings before this court suggested that section 4324(c)(1) provides an automatic right to a hearing as the majority holds.

"nonsensical." Maj. op. at 21. To reach this conclusion the plurality ignores the words of the statute, which permit representation in the court of "such hearing or adjudication." 38 U.S.C. § 4324(c)(1) (emphasis added). The statute only requires: (1) retroactivity; and (2) that a person be entitled to representation when the Board hears or adjudicates their USERRA claims. Id. This statute cannot reasonably be read to mandate a right to a hearing on all USERRA claims.

Even if section 4324(c)(1) were ambiguous, which it is not, the legislative history demonstrates that during the enactment of this section changes were made to the statutory language to address concerns regarding whether the Office of Special Counsel would be required to represent USERRA claimants or how representation would be made available. See, e.g., JOINT EXPLANATORY STATEMENT ON H.R. 955, 140 CONG. REC. H 9136 (1994) reprinted in 1994 U.S.C.C.A.N. 2493, 2509-10 (explaining the adoption of the Senate proposal that an "individual would be able to be represented before the MSPB by a representative of choice"); S. REP. NO. 103-158, at 37 (1993) (stating that USERRA would "[e]nable Federal executive agency employees . . . to receive representation by the Office of Special Counsel before the MSPB and the U.S. Court of Appeals for the Federal Circuit"). I have found nothing in the legislative history that suggests that Congress intended section 4324(c)(1) to mandate that the Board provide a hearing to all USERRA claimants. In fact, the legislative history, as reflected in the statute, indicates that the Board would be free to promulgate rules to govern the USERRA claims process. See 38 U.S.C. § 4331(2)(A) (2000); S. REP. NO. 103-158, at 75 (1993) ("Although [the Board] may have authority under title 5, United States Code, to prescribe necessary regulations, explicit inclusion of that authority in chapter 43 of

title 38 would remove any doubt on this matter."); see also 5 U.S.C. § 1204(a)(1) (2000) (amended with enactment of USERRA to permit the Board to "hear, adjudicate, or provide for the <u>hearing or adjudication</u>, of all matters within the jurisdiction of the Board under . . . [USERRA], or any other law, rule, or regulation . . . " (emphasis added)).

Although the plurality determines that the statutory language unambiguously requires a hearing, the majority also relies on <u>Fishgold</u>, 328 U.S. at 285 and <u>King v. St. Vincent's Hospital</u>, 502 U.S. 215, 220 n.9 (1991), to conclude that "it is abundantly clear that Congress' intent is to provide veterans a hearing upon request, especially because" we resolve statutory ambiguities in favor of the veteran. <u>Maj. op.</u> at 23-24. The statute is unambiguous and, in my opinion, does not convey an automatic right to a hearing.

B.

Although I do not believe section 4324 conveys a right to a hearing in every case, I do conclude Kirkendall is entitled to a hearing based on the Board's regulations. Section 7701 of Title 5 of the United States Code applies to appeals to the Board "under any law, rule, or regulation." <u>See also</u> 5 U.S.C. § 1204(a)(1) (2000) (giving the Board authority to hear or adjudicate any matter brought within its jurisdiction by "any . . . rule, or regulation"). The plain import of this language permits appeals to lie with the Board not only under laws, but also under rules and regulations. Here, the Board has promulgated regulations that invoke section 7701 by repeatedly defining USERRA claims as "appeals" and by placing these claims within its appellate jurisdiction.[8] <u>See</u> 5 C.F.R. §§ 1201.3(b)(1), 1208.4(a), 1208.13. The Board's regulations clearly define USERRA claims to be within the Board's appellate jurisdiction. <u>See, e.g.</u>, 5 C.F.R. §

---

[8] In fact, the Board's regulations refer to USERRA actions as "appeals" 29 times and the person bringing the action before the Board as the "appellant" 28 times.

1201.3(b)(1); <u>Petersen v. Dep't of the Interior</u>, 71 M.S.P.R. 227, 234 (1996) (stating that "both the language and legislative history of USERRA make it evident that all cases under USERRA brought by the individual appellants fall within the Board's appellate jurisdiction"). The Board's intent when it enacted the rules enabling USERRA was clear: USERRA actions are "appeals." <u>See</u> 65 Fed. Reg. 49,895 (Aug. 16, 2000) (notice of final rulemaking for subpart 1208 referring to USERRA claims as "appeals"); 65 Fed. Reg. 5,409 (Feb. 4, 2000) (addressing new subpart 1208 and continuing to refer to USERRA claims as "appeals"); 62 Fed. Reg. 66,813 (Dec. 22, 1997) (stating that USERRA provides federal employees expanded rights "including a new statutory right to appeal a USERRA violation to the MSPB"). Given that the Board treats USERRA proceedings as appeals, USERRA proceedings are subject to the procedures specified in section 7701 and Kirkendall had a right to a hearing. [9]

---

[9] The Board interpreted 5 C.F.R. § 1208.13 as permitting it to exercise discretion on whether or not Kirkendall was entitled to a hearing. <u>Kirkendall v. Dep't of the Army</u>, AT-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-B-1, AT-0330-02-0621-B-1 at 6 n.3. Because the Board has consistently treated USERRA actions as "appeals," its interpretation of 5 C.F.R. § 1208.13 as giving it discretion to grant a hearing in a USERRA action is improper and inconsistent with the body of its regulations.

# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

BRYSON, <u>Circuit Judge</u>, with whom LOURIE, RADER, and DYK, <u>Circuit Judges</u>, join, and with whom SCHALL and LINN, <u>Circuit Judges</u>, join in part, dissenting. *

I respectfully dissent as to both issues in this case. With respect to the first issue—whether equitable tolling may apply to the 15-day limitations period under the Veterans Employment Opportunities Act of 1998 ("VEOA"), Pub. L. No. 105-339—I join Judge Moore's dissent. With respect to the second issue—whether a complainant has an automatic right to a hearing before the Merit Systems Protection Board under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353—I dissent from the court's disposition for the reasons set forth below.

The Board's USERRA regulation provides, and the Board has consistently held, that USERRA complainants have no absolute statutory or regulatory right to a hearing, but that hearings may be conducted at the discretion of the administrative judge presiding over the proceeding. The Board's consistent practice under its USERRA

---

* Judges Schall and Linn join this dissent with respect to the USERRA issue.

regulation has been to direct its administrative judges to hold hearings in USERRA cases when there are disputed issues of material fact, but not to require hearings in every case in which one is requested. See, e.g., Wooten v. Dep't of Veterans Affairs, 102 M.S.P.R. 131, 135-36 (2006); Perih v. Dep't of Veterans Affairs, 102 M.S.P.R. 454, 457 (2006); Mills v. Dep't of Transp., 101 M.S.P.R. 610, 614 (2006); Jordan v. U.S. Postal Serv., 90 M.S.P.R. 525, 529 (2002), aff'd, 82 F. App'x 42 (Fed. Cir. 2003).[1]

Judge Mayer's opinion takes the position that the right to a hearing before the Board in USERRA cases is guaranteed by both the USERRA statute itself, 38 U.S.C. § 4324, and by the statute that gives the Board jurisdiction over appeals from agency decisions, 5 U.S.C. § 7701. Judge Moore's concurring opinion disagrees with that statutory analysis but takes the position that the right to a hearing is created by Board regulation. I disagree with both views and conclude that, as the Board has consistently held, neither those statutes nor the Board's regulations provide an automatic right to a hearing in USERRA cases. Even if the statutes and regulations are considered unclear on this point, the Board's interpretations of the pertinent statutes and its own regulations are entitled to deference under well-established principles of administrative law. The Board's resolution of the USERRA hearing issue should therefore be upheld.

---

[1] The Board's practice in USERRA cases is consistent with the practice of many other federal administrative agencies that have "opted to make available procedures for the summary disposition of adjudicatory matters." Puerto Rico Aqueduct & Sewer Auth. v. Envtl. Prot. Agency, 35 F.3d 600, 606 (1st Cir. 1994); see Costle v. Pac. Legal Found., 445 U.S. 198, 214 (1980) (referring with approval to agency rules requiring a party who seeks a hearing to "tender[ ] evidence suggesting the need for a hearing"); State of Pa. v. Riley, 84 F.3d 125, 130 (3d Cir. 1996) (administrative hearing not required absent a disputed material issue of fact); 32 Charles Alan Wright & Charles H. Koch, Jr., Federal Practice & Procedure § 8230 (2006).

I

The analysis begins with 5 U.S.C. § 7701(a), which provides that "[a]n employee or applicant for employment may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation." Section 7701 sets forth a number of procedural rights that attach to matters that are appealable to the Board. For present purposes, the most important is that the appellant has the right "to a hearing for which a transcript will be kept." Id. § 7701(a)(1).

A

The statutory trigger for applying section 7701 and its prescribed procedures is that the action must be "appealable to the Board under any law, rule, or regulation." The paradigmatic example of an action that is made "appealable to the Board under any law" is an adverse agency action under 5 U.S.C. § 7512, from which an employee "is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title." Id. § 7513(d). There are a number of other actions that are also made appealable to the Board under section 7701, such as those in which appeals are authorized under 5 U.S.C. §§ 3593(c)(2) (appeal from denial of reinstatement in Senior Executive Service), 3595(c) (appeal from removal from Senior Executive Service due to reduction in force), 4303(e) (appeal from reduction in grade or removal for unacceptable performance), 7543(d) (appeal from removal or suspension from Senior Executive Service), 8347(d)(2) (appeal from finding of disability based on mental condition, for employees covered by the Civil Service Retirement System), and 8461(e)(2) (same, for employees covered by the Federal Employees' Retirement System). In each of those instances, Congress

referred to the action before the Board as an "appeal" and expressly referred to the appeal as being subject to section 7701.

In addition to the statutory sources of authority for appeals to the Board, a number of regulatory provisions promulgated by the Office of Personnel Management ("OPM") authorize section 7701 appeals. This court has listed several examples of Board "jurisdiction conferred by [OPM] regulation," including "the board's authority to hear certain probationers' appeals (5 C.F.R. §§ 315.806, 315.908), and appeals concerning reductions-in-force (5 C.F.R. § 315.901), and reemployment rights (5 C.F.R. § 352.209)." Maule v. Merit Sys. Prot. Bd., 812 F.2d 1396, 1398 n.2 (Fed. Cir. 1987); see also Hellman v. Office of Pers. Mgmt., 10 M.S.P.R. 639, 642-43 (1982). Other OPM regulations that authorize appeals to the Board include 5 C.F.R. §§ 302.501, 330.209, 352.313, 352.508, 352.707, 352.807, and 353.304 (all authorizing appeals to the Board from denials of reinstatement, reemployment, and restoration in various circumstances), 359.805 (authorizing appeals to the Board from improper furloughs), 731.501 (authorizing appeals to the Board from unsuitability determinations), 300.104 (authorizing appeals from applications of unlawful employment practices by OPM), and 839.1302 (authorizing appeals from adverse decisions under Federal Erroneous Retirement Coverage Corrections Act). As this court's decisions make clear, those OPM regulations are the sources of the right to appeal to the Board; because they make particular actions "appealable to the Board under any . . . regulation," 5 U.S.C. § 7701(a), they are the triggers for applying the section 7701 procedures. See Sturdy v. Dep't of the Army, 440 F.3d 1328, 1333 (Fed. Cir. 2006) (right to appeal from reemployment priority decision established by OPM regulation); Roberto v. Dep't of the

05-3077                                              4

<u>Navy</u>, 440 F.3d 1341, 1353 (Fed. Cir. 2006) (same); <u>Meeker v. Merit Sys. Prot. Bd.</u>, 319 F.3d 1368, 1373 (Fed. Cir. 2003) (OPM regulation grants Board jurisdiction over appeal from OPM's application of employment practices); <u>Maule</u>, 812 F.2d at 1398 n.2.

Importantly, the Board's jurisdiction is not limited to the appeals referred to in section 7701. In particular, the Board has jurisdiction over other actions that are not statutorily denominated "appeals," <u>see</u> 5 U.S.C. § 1221(a) (individual right of action for whistleblower claims), or in which the governing statutes prescribe procedures other than those set forth in section 7701, <u>see</u> 5 U.S.C. § 3330a(d)(1) (VEOA); <u>id.</u> §§ 8347(d)(1), 8461(e)(1) (review of agency action in certain disability retirement cases). One such statute is USERRA, which provides that a person claiming to have been denied a right created by the statute "may submit a complaint against a Federal executive agency or the Office of Personnel Management," which will be adjudicated by the Board. 38 U.S.C. § 4324.

The USERRA statute does not refer to the proceeding before the Board as an "appeal," and it does not refer to section 7701 as providing the procedures for adjudicating USERRA complaints before the Board. Therefore, section 7701 does not confer an absolute right to a hearing before the Board in USERRA cases. Such a right, if conferred by statute, must be found in the USERRA statute itself. Contrary to the position taken in Judge Mayer's opinion, however, the USERRA statute does not confer such a right. Although the USERRA statute refers to the possibility of a hearing on a complaint brought before the Board, 38 U.S.C. §§ 4324(c)(1), 4324(c)(4), it does not state that the complainant has an automatic right to a hearing. Section 4324(c)(1) of USERRA provides that the Board "shall adjudicate any complaint brought before the

Board" pursuant to USERRA and refers to a person "who seeks a hearing or adjudication by submitting such a complaint." 38 U.S.C. § 4324(c)(1). Nothing in that formulation, however, gives complainants an absolute right to a hearing, just as the general run of administrative statutes that provide for a hearing have not been construed to require an automatic hearing in the absence of a material factual dispute. See note 1, supra. Instead, section 4324(c)(1) simply echoes the language used in the Board's general authorizing statute, 5 U.S.C. § 1204(a)(1), which gives the Board authority to "hear, adjudicate, or provide for the hearing or adjudication of all matters within the jurisdiction of the Board," a provision that plainly does not confer an absolute right to a hearing in every proceeding before the Board.

B

As the Board points out in its amicus curiae brief, the fact that Congress chose to grant the Board specific authority to create procedures for USERRA proceedings is further evidence that Congress regarded USERRA proceedings as not being governed by section 7701. Section 7701 already has a provision granting the Board authority to adopt procedures for appeals governed by that statute. If USERRA proceedings fell within section 7701, the USERRA provision giving the Board the authority to promulgate procedural regulations, 38 U.S.C. § 4331(b)(2)(A), would be redundant.

The legislative background of section 4331(b)(2)(A) supports the inference that Congress intended for the Board to be able to prescribe different procedures for USERRA cases than it employed for section 7701 appeals. The original bill that ultimately became USERRA lacked any provision authorizing the Board to promulgate regulations to govern cases within its new USERRA jurisdiction. In a written submission

to the Senate committee, the Board urged that such a provision be included so that it would be clear that the Board could promulgate procedural regulations specific to USERRA cases. The Board explained that "[m]aking the Board's regulatory power explicit for [USERRA] purposes would assure that the Board could issue regulations tailored to the requirements of [USERRA] cases." <u>Legislation Relating to Reemployment Rights, Educational Assistance, and the U.S. Court of Veterans Appeals: Hearing before the S. Comm. On Veterans' Affairs</u>, 102d Cong., 1st Sess. 309-10 (1991). The bill was amended as the Board requested. The new provision ultimately became section 4331(b)(2)(A) of USERRA, which the Board invoked in promulgating its new USERRA regulation giving the Board discretion with regard to holding hearings in USERRA cases, 5 C.F.R. § 1208.13(b). Congress's affirmative response to the Board's request for specific authorization to promulgate procedural regulations "tailored to the requirements" of USERRA cases is a further indication that Congress did not intend for the new class of USERRA claims to be governed by the procedures set forth in section 7701 and the Board's regulation promulgated under the authority of that provision.

C

This court's cases recognize that the procedures prescribed in section 7701 do not govern all matters before the Board, or even all matters involving Board review of an initial decisionmaker distinct from the Board. An instructive case that addresses the scope of section 7701 is <u>Lindahl v. Office of Personnel Management</u>, 776 F.2d 276 (Fed. Cir. 1985). There, the court dealt with the procedures used for appeals from OPM decisions in disability retirement cases under 5 U.S.C. § 8347(d). Congress delegated

to the Board the authority to prescribe procedures for such cases, and the Board did so, providing inter alia that in voluntary retirement cases the individual would bear the burden of proof. Lindahl appealed, arguing that section 7701 applied to the disability proceedings, which the Board termed "appeals," and that the agency should bear the burden of proof, as dictated by section 7701(c). This court rejected that argument. As part of its rationale, the court noted that Congress had given the Board independent statutory authority to prescribe procedures for disability retirement cases and thus could not be deemed to have intended for the section 7701 procedures to apply. 776 F.2d at 278-79. The court reached that conclusion even though the statute at issue in Lindahl referred to the disability proceeding before the Board as an "appeal." In this case, the USERRA statute not only provides separate rulemaking authority for the Board but also does not refer to the proceedings before the Board as "appeals." The argument for finding section 7701 inapplicable is therefore even stronger here than it was in Lindahl.

The differing burden of proof in section 7701 appeals and USERRA cases provides further evidence that USERRA cases are not "appeals" governed by section 7701. Section 7701 provides that in all appeals under that section, with one narrow exception, the agency bears the burden of proof by a preponderance of the evidence to sustain the agency action on appeal. 5 U.S.C. § 7701(c)(1)(B). However, in Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001), this court held that in USERRA discrimination cases the employee or applicant who makes a claim of discrimination bears the initial burden of proof of showing, by a preponderance of the evidence, that the employee's military service was "a substantial or motivating factor" in the adverse employment action, a different standard than that applicable under section

7701(c).[2] If section 7701 covered all proceedings before the Board, including USERRA proceedings, there would be a conflict between the express burden of proof provision of section 7701 and the different burden of proof found to be applicable in USERRA discrimination cases. There was no need for Congress to reconcile the conflicting burdens of proof under the two statutes for the simple reason that USERRA discrimination complaints were not made subject to section 7701.

D

Because section 7701 does not govern USERRA proceedings and because the reference in section 4324(c)(1) of USERRA to a person "who seeks a hearing or adjudication" does not confer an absolute right to a hearing before the Board, neither statute provides a source for the right that Mr. Kirkendall asserts. Even if the reference to a "hearing or adjudication" in section 4324(c)(1) were considered ambiguous, however, the Board has interpreted that language as not granting an absolute right to a hearing. That interpretation, adopted through notice-and-comment rulemaking, is a reasonable one and is therefore entitled to deference under the principles of Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). See United States v. Mead Corp., 533 U.S. 218, 229-30 (2001); Hawkins v. United States, 469 F.3d 993, 1000, 1002 (Fed. Cir. 2006); Elkem Metals Co. v. United States, 468 F.3d 795,

---

[2] In addition to prohibiting discrimination based on military service, see 38 U.S.C. § 4311, USERRA strengthened the prior legal protections for service members seeking restoration to employment, see 38 U.S.C. §§ 4312-4316. The Board has distinguished restoration cases from discrimination cases with respect to the burden of proof, holding that in restoration cases the burden falls on the agency to prove that it met its statutory obligations. See Wyatt v. U.S. Postal Serv., 101 M.S.P.R. 28, 36 (2006); Clavin v. U.S. Postal Serv., 99 M.S.P.R. 619, 622-23 (2005).

800-02 (Fed. Cir. 2006); Motorola, Inc. v. United States, 436 F.3d 1357, 1364-66 (Fed. Cir. 2006).

The Board's regulations sharply distinguish between appeals governed by section 7701 and other matters within its jurisdiction, such as USERRA cases. In its regulations setting forth the procedures applicable to appeals governed by section 7701, which are found at 5 C.F.R. part 1201 (specifically, at 5 C.F.R. §§ 1201.11-1201.121), the Board relied on 5 U.S.C. § 7701(k), the subsection of section 7701 that authorizes the Board to "prescribe regulations to carry out the purpose of this section." See 54 Fed. Reg. 53505 (Dec. 29, 1989); 51 Fed. Reg. 25147 (July 10, 1986). Those regulations, like section 7701 itself, provide that an appellant "has a right to a hearing" in an appeal before the Board. 5 C.F.R. § 1201.24(d). The Board, however, has promulgated a separate regulation setting forth the procedures that apply in USERRA proceedings. In adopting that regulation, which is found in 5 C.F.R. part 1208 (specifically, 5 C.F.R. §§ 1208.11-1208.16), the Board relied on 38 U.S.C. § 4331(b)(2)(A), the subsection of the USERRA statute that grants the Board authority to prescribe regulations to carry out its activities under USERRA. See 65 Fed. Reg. 5412 (Feb. 4, 2000). The Board has made clear that USERRA proceedings are governed by the regulation in part 1208 to the extent that it supplements or conflicts with the regulations in part 1201. See 5 C.F.R. § 1201.3(b)(1).

Unlike the regulations in part 1201, the USERRA regulation in part 1208 does not provide that a complainant has an automatic right to a hearing before the Board, but instead provides that if the complainant submits a timely request for a hearing, a hearing "may be provided" either on the merits of the dispute or on the issue of

05-3077                                              10

jurisdiction. 5 C.F.R. § 1208.13(b). Since promulgating the USERRA regulation in 2000, the Board has consistently interpreted it as giving the Board discretion in determining whether to hold hearings in USERRA cases. See Smith v. Dep't of Justice, 103 M.S.P.R. 207, 213 (2006); Jordan, 90 M.S.P.R. at 528; Metzenbaum v. Dep't of Justice, 89 M.S.P.R. 285, 290 (2001). In the absence of a clear statutory directive that hearings be held in USERRA cases whenever a complainant makes a timely request, the Board's contrary interpretation is entitled to deference and should be sustained.

## II

All this would be straightforward enough, and would seem to leave no room for doubt that the Board has discretion whether to provide a hearing in a USERRA case, except for one complication. In its regulations, the Board has chosen to divide the universe of actions before it into two categories, "original" and "appellate." Based on that perhaps unfortunate choice of terms, Judge Moore's opinion concludes that all the actions the Board classified as within its "appellate" jurisdiction are "appeals" for purposes of section 7701. The Board has made clear, however, that its regulations should not be interpreted in that manner, and it is a mistake for us not to take the Board at its word with respect to the meaning of its own regulations.

## A

In the Board's USERRA regulation, a "complaint" or "action," as those terms are used in USERRA, is categorized as an "appeal" for purposes of the regulation. 5 C.F.R. § 1208.4(a). But the Board has made clear that by denominating USERRA complaints or actions as "appeals" for purposes of the regulation, it did not convert USERRA complaints into appeals that fall within section 7701 and are therefore subject to all the

procedures mandated by section 7701. The Board explained the matter in detail in a case decided shortly after the Board adopted its USERRA regulation:

> The Board's statement [in the USERRA regulation] that "appeal" is inclusive in this manner indicates an effort on its part to achieve consistency in describing matters that the Board is authorized to review. It does not purport to suggest that, because USERRA complaints are "appeals," they are, by definition, appealable to the Board pursuant to 5 U.S.C. § 7701 . . . . In adopting [the USERRA] regulation, the Board stated that it was adding USERRA actions to the list of appealable actions (as opposed to those which fall under the Board's "original jurisdiction"). . . . There was no suggestion that the Board thereby considered that USERRA actions were appealable under 5 U.S.C. § 7701, and that they were, therefore, covered by 5 U.S.C. § 7702. As noted above, the USERRA statute itself did not provide that the Board's appellate procedures at 5 U.S.C. § 7701 would apply. And the Board's case law, as it developed, was, and continues to be, wholly consistent with that notion. . . . This is so regardless of whether the Board refers to such claims in its regulations as appeals or complaints. The terminology used simply does not, nor can it, render these matters subject to the statutory provisions of 5 U.S.C. §§ 7701 and 7702 when the USERRA statute itself does not so indicate.

Metzenbaum, 89 M.S.P.R. at 290-92; see also Jordan, 90 M.S.P.R. at 529 n.2 (USERRA complaints are not adjudicated under 5 U.S.C. § 7701, and therefore section 7701's prohibition against summary judgment does not apply); Bodus v. Dep't of the Air Force, 82 M.S.P.R. 508, 516 (1999) (USERRA complaints are not appeals, but petitions for remedial action).

As the Board explained, its procedural regulations in 5 C.F.R. §§ 1201-1208 do not purport to create rights of appeal, either generally or in USERRA cases. Those regulations merely set forth the procedures applicable to cases in which rights of action before the Board are created by other sources, i.e., by statute or by OPM regulation. For that reason, it is not important whether the Board's regulations call particular proceedings "complaints," "appeals," or otherwise. What matters is whether a particular

agency action is made "appealable under any statute, rule, or regulation" within the meaning of 5 U.S.C. § 7701(a). That issue is not resolved by looking to the Board's regulations that govern the procedures to be followed in actions over which the Board has been accorded jurisdiction.

The Board's regulation that sets forth the components of what it terms its "appellate jurisdiction," 5 C.F.R. § 1201.3, makes this point clear. Subsection (a) of that regulation enumerates the appeals governed by the procedures of section 7701, describing each of those appeals as being "authorized by law, rule, or regulation," the triggering language of section 7701. Section 1201.3 then sets forth each of the 20 types of appeals that are authorized by law, rule, or regulation, along with the statute or regulation that authorizes an appeal in each case. For example, section 1201.3(a)(1) refers to appeals from reductions in grade or removal for unacceptable performance, and it then cites the regulatory and statutory source of the authority for taking such appeals (5 C.F.R. part 432 and 5 U.S.C. § 4303(e)). Section 1201.3(a) thus makes clear that it is not section 1201 itself that provides the statutory or regulatory authority for the appeals, and that section 1201 merely lists those cases in which the Board has been granted appellate jurisdiction through other statutory or regulatory authorization. Significantly, the Board does not list USERRA proceedings in section 1201.3(a), which uses the triggering language of section 7701. Instead, USERRA proceedings are listed in 5 C.F.R. § 1201.3(b)(1), a separate subsection of section 1201.3. The Board's own "appellate jurisdiction" regulation therefore does not characterize USERRA claims as among those in which "appeals are authorized by law, rule, or regulation" and thus governed by the procedures of section 7701.

05-3077                                    13

The subsection of the USERRA regulation that refers to the Board's jurisdiction reinforces the same point. That subsection, 5 C.F.R. § 1208.2, states that the right to review by the Board in USERRA cases derives from the USERRA statute, 38 U.S.C. § 4324. In order to determine whether the procedures of section 7701 apply, we therefore must determine whether the USERRA statute creates a right of appeal under section 7701. The statute itself makes clear that it does not. The USERRA statute makes no reference to an appeal and no reference to section 7701. Moreover, as noted, the USERRA statute does not invoke the procedures of section 7701, either explicitly or implicitly; instead, the USERRA statute directs the Board to formulate its own regulations governing USERRA proceedings. <u>See</u> 38 U.S.C. § 4331(b)(2)(A). The Board has done so by including a regulatory provision governing when hearings will be afforded in USERRA cases. 5 C.F.R. § 1208.13(b). Section 7701 therefore has no role to play with respect to actions before the Board authorized by USERRA.

B

Interpreting the Board's USERRA regulation as conferring an automatic right to a hearing is also contrary to the plain language of the regulation and the Board's consistent interpretation of it. The pertinent subsection reads as follows:

> An appellant must submit any request for a hearing with the USERRA appeal, or within any other time period the judge sets. A hearing may be provided to the appellant once the Board's jurisdiction over the appeal is established. The judge may also order a hearing if necessary to resolve issues of jurisdiction.

5 C.F.R. § 1208.13(b).

That regulation cannot reasonably be read to provide an automatic right to a hearing upon request. The word "may," which defines the right to a hearing in the

regulation, "customarily connotes discretion," Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 346 (2005), and we have routinely construed statutes and regulations containing the word "may" as granting discretion to the agency in question, see Green v. Gen. Servs. Admin., 220 F.3d 1313, 1317-18 (Fed. Cir. 2000) (the use of the word "may" in an OPM regulation vests agency with discretion); Hubbard v. Merit Sys. Prot. Bd., 205 F.3d 1315, 1320 (Fed. Cir. 2000) (use of the word "may" in a statute shows "intent to provide . . . broad discretion"). Moreover, the language in the Board's USERRA regulation stands in sharp contrast with the language the Board uses in its regulations that apply to section 7701 appeals, where the Board simply states that "an appellant has a right to a hearing," 5 C.F.R. § 1201.24(d).[3]

More importantly, the Board has consistently construed its USERRA regulation as making hearings in USERRA cases discretionary with the Board. See Metzenbaum, 89 M.S.P.R. at 290; see also Smith, 103 M.S.P.R. at 213; Perfilio v. Dep't of the Air Force, 102 M.S.P.R. 444, 448 (2006); Williams v. Dep't of the Air Force, 97 M.S.P.R. 252, 254 n.* (2004); Schoch v. Dep't of the Army, 91 M.S.P.R. 134, 135 (2001); Jordan, 90 M.S.P.R. at 529. It is well settled that an administrative agency's interpretation of its own regulations is entitled to substantial deference from a reviewing court. See Lyng v. Payne, 476 U.S. 926, 939 (1986). Because an agency is the master of its own regulations, the deference we accord to an agency's construction of its own regulations

---

[3] The Board has used similar wording in addressing the right to a hearing in VEOA appeals, 5 C.F.R. § 1208.23(b) ("[a] hearing may be provided"), which the Board interprets as conferring discretion to conduct a hearing, see Sherwood v. Dep't of Veterans Affairs, 88 M.S.P.R. 208, 212-13 (2001). By contrast, in referring to the right to a hearing on the merits of an individual right of action appeal, the Board has stated that the appellant "has a right to a hearing," 5 C.F.R. § 1209.6(b), the same language that the Board has used in 5 C.F.R. § 1201.24(d), which governs section 7701 appeals.

is even greater than the deference we accord to an agency's construction of the statute it is charged with enforcing. See Gose v. U.S. Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006) ("We defer even more broadly to an agency's interpretations of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly well suited to speak to its original intent in adopting the regulation."); Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) ("[I]t is well settled that an agency's interpretation of its own regulations is entitled to broad deference from the courts. Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own."). In addition, the Board has been consistent in its interpretation of the regulation governing hearings in USERRA cases, a factor that further enhances the agency's entitlement to deference with regard to its construction of its own regulation. See Gose, 451 F.3d at 837 ("Deference is particularly appropriate when the agency interpretation has been consistently applied.").

Given the high degree of deference due, there is no justification for rejecting the Board's sensible interpretation of its USERRA regulation regarding hearings in favor of a much less natural interpretation. The Board's interpretation of its regulations accords with the plain meaning of the regulations and is not inconsistent with any statute or other regulatory provision. To interpret the Board's regulations otherwise converts an administrative choice of nomenclature into a creation of rights. That is not what the Board tells us it did, and there is no reason not to defer to the Board's explanation of what its regulations do. The Board's regulations do not create a right of appeal with

respect to USERRA complaints, and thus do not provide USERRA complainants an automatic right to a hearing under section 7701(a)(1).

Because I disagree with the analysis in both of the opinions that make up the majority in this case, I respectfully dissent from the court's disposition of the USERRA hearing issue.

# United States Court of Appeals for the Federal Circuit

05-3077

JOHN E. KIRKENDALL,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

DYK, Circuit Judge, dissenting.

I join Judge Bryson's opinion dissenting from the majority's decision on the USERRA hearing issue, and I join Part I of Judge Moore's opinion dissenting from the majority's decision on the VEOA equitable tolling issue. I agree with Judge Moore that even if a presumption of equitable tolling applies to this statute, that presumption has been rebutted. I write separately to note that, in my view, the doctrine of equitable tolling and the accompanying presumption should not apply to appeal periods in either the judicial or the administrative context.

The doctrine of equitable tolling is designed to militate the harsh results that would flow from the strict application of statutes of limitations. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). The fundamental error in today's decision lies in applying that doctrine to a statute providing a time for appeal. This error traces back to our 1998 decision in Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998) (en banc). There we held that equitable tolling could apply to an administrative appeal period—in that

case the period governing appeal to the Court of Veterans Appeals of a denial of service connection by the Board of Veterans' Appeals. Four dissenting judges urged that the Bailey majority's holding was inconsistent with the Supreme Court's decisions in Stone v. INS, 514 U.S. 386, 405 (1995) (citing Missouri v. Jenkins, 495 U.S. 33, 45 (1990)), which held that periods of appeal are mandatory and jurisdictional and not subject to tolling.[1]

Since our decision in Bailey the Supreme Court's cases have admittedly clouded the "jurisdictional" nature of appeal periods, but have not undermined the strictness of the rule for appellate time limits mandated in Stone and Jenkins. In Kontrick v. Ryan, 540 U.S. 443 (2004), the Court held that claim-processing rules (such as the time limitation for objecting to the debtor's discharge in the bankruptcy rule at issue in the case) are not properly termed jurisdictional, and cautioned about "less than meticulous" use of the term jurisdictional. Id. at 454-55. The Court reiterated this warning in Eberhart v. United States. 126 S. Ct. 403, 404-05 (2005). See also Scarborough v. Principi, 541 U.S. 401, 413 (2004). Kontrick and related cases at most suggest that time for appeal provisions are not jurisdictional—and hence waivable—though the question whether those provisions are jurisdictional is itself under review by the Supreme Court. Bowles v. Russell, 127 S. Ct. 763 (2006) (granting petition for writ of

---

[1]     The Supreme Court's earlier decision in Bowen v. City of New York, 476 U.S. 467 (1986), admittedly is in some tension with the Supreme Court's later cases. In Bowen the Supreme Court held that a 60-day period for filing a civil action in district court to review a decision of the Social Security Administration was subject to equitable tolling. 476 U.S. at 471-72, 481. However, the Supreme Court repeatedly referred to the 60-day period at issue as a "statute of limitations," rather than an appellate deadline.

certiorari).[2]  Whether or not appeal periods are jurisdictional, <u>Kontrick</u> and its progeny do not suggest that appeal periods are subject to equitable tolling.

The majority of circuits to consider the question in the past few years have held that time for appeal provisions must be strictly enforced.  Some circuits have concluded that such provisions remain mandatory and jurisdictional.  <u>Alva v. Teen Help</u>, 469 F.3d 946, 952-53 (10th Cir. 2006) (holding that Fed. R. App. Proc. 4 remains jurisdictional since "[n]either <u>Eberhart</u> nor <u>Kontrick</u> affects the jurisdictional nature of the timely filing of an [sic] civil appeal"); <u>Bowles v. Russell</u>, 432 F.3d 668, 671 n. 1 (6th Cir. 2005), <u>cert. granted</u>, 127 S. Ct. 763 (2006) (holding that Fed. R. App. Proc. 4 remains jurisdictional after <u>Kontrick</u>); <u>see also</u> <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 393 (4th Cir. 2004) (assuming, after <u>Kontrick</u>, that Fed. R. App. Proc. 4 is jurisdictional).  If appeal periods are mandatory and jurisdictional, as the dissent in <u>Bailey</u> urged, it is difficult to see how they could be subject to general equitable tolling. 160 F.3d at 1371-72.

Other circuits have held that even though the time limits may not be jurisdictional, they must be strictly enforced nonetheless.  <u>In re Johns-Manville Corp.</u>, 2007 WL 106516, at *4 (2d Cir. Jan. 17, 2007) ("[W]hether a cross-appeal time limit is jurisdictional or, after <u>Eberhart</u>, only a 'claim-processing rule,' we conclude that <u>Eberhart</u> strongly indicates that we are to enforce that limit strictly, once it is properly invoked."); <u>United States v. Leijano-Cruz</u>, 473 F.3d 571, 574 (5th Cir. 2006) ("[T]he district court does not err, after <u>Eberhart</u>, if it enforces an inflexible claim processing rule, and we

---

[2]    <u>Bowles</u> appears also to present the question whether some form of equitable tolling is available with respect to appeal periods.  <u>See</u> Brief of Petitioner at 14, <u>Bowles v. Russell</u>, No. 06-5306 (U.S. Jan. 19, 2007).

may not reverse its decision to do so."). So far as I have been able to determine, only the Ninth Circuit disagrees. See Socop-Gonzalez v. INS, 272 F.3d 1176, 1192-93 (9th Cir. 2001).

In my view the circuits holding that appeal periods are to be strictly enforced are correct, and our decision in Bailey was incorrect.[3] As the Seventh Circuit has recently concluded, "[i]t is hard to see why a court should invoke equitable tolling to supply a litigant with more time to apply for review of an agency's decision. The period for seeking administrative review, like the time for appealing a decision of the district court, usually is brief because a contest is ongoing." Farzana K. v. Indiana Dep't of Educ., 473 F.3d 703, 706 (7th Cir. 2007).[4]

---

[3] Even our own circuit has not been entirely consistent. See Oja v. Dep't of Army, 405 F.3d 1349, 1359 (Fed. Cir. 2005) (appeal period not subject to equitable tolling).

[4]

> It is hard to see why a court should invoke equitable tolling to supply a litigant with more time to apply for review of an agency's decision. The period for seeking administrative review, like the time for appealing a decision of the district court, usually is brief because a contest is ongoing. The loser simply notifies the other side (by a petition for review or a notice of appeal) that argument will resume in another forum. A lawyer who misses the time to file a notice of appeal cannot invoke "equitable tolling" to justify the delay. Rules may allow judges to grant extra time. See Fed. R.App. P. 4(a)(5), (6). Once the time as extended under the Rules lapses, however, common-law tolling is unavailable; the existence of rules specifying when (and how far) time may be extended is incompatible with an open-ended power to add extra time on "equitable" grounds. Indeed, the Supreme Court has characterized the time limit for appellate review within a unitary system as "jurisdictional," e.g., Browder v. Director of Corrections, 434 U.S. 257 (1978), and although Eberhart calls that characterization into question, the Court continues to insist that "mandatory" rules be enforced whether or not they are dubbed "jurisdictional." Allowing more time

There are, moreover, powerful reasons to doubt that Congress intended equitable tolling of the short periods provided for appeal, because of the implications of such provisions on the smooth functioning of the judicial and administrative systems. As noted, the presumption of equitable tolling recognized in <u>Irwin</u>, 498 U.S. at 95-96 and <u>United States v. Brockamp</u>, 519 U.S. 347, 350 (1997), arose in the context of statutes of limitations. When a statute of limitations is tolled, the efficient functioning of the adjudicatory system is not impacted because statutes of limitations merely govern the time when a case is first filed. In contrast equitable tolling of appeal periods creates a risk of making finality unattainable. For example, in this case the appellant urges that he was disabled from filing an appeal because of mental incapacity. The majority's holding naturally implies that, if established, this would equitably toll the appeal period for the duration of his incapacity, even though that might render the decision under review non-final for many years. Under such circumstances, the setting of a short period for appeal becomes meaningless.

Nor do I see why equitable tolling of appeal periods is necessary in the interests of fairness. Unlike a potential litigant confronting a statute of limitations, an individual who appeals an adverse decision has already determined to commence a judicial or administrative proceeding and has demonstrated the ability to participate in the process. Typically as well, in administrative cases the losing party receives actual notice of the

---

under the rubric of equitable tolling, when a federal rule covers the subject of extensions, would just contradict the rule—and for no good reason. Once a litigant has received one or more decisions (whether from district courts or hearing officers under the IDEA) after formal adjudication, there is little point in bending the rules to allow another.

time for appeal. If some relief for appellate time limits is necessary in the interests of fairness, Congress can explicitly provide a limited exception, as has been done in Rule 4(a)(5) of the Federal Rules of Appellate Procedure. I see no basis for applying the general doctrine of equitable tolling and its presumption to appeal periods.

---

473 F.3d at 706 (emphasis added).